A91A1174. DENSON v. CITY OF ATLANTA.
A91A1175. GOLDEN v. CITY OF ATLANTA.
A91A1176. CITY OF ATLANTA v. MARTA et al.
(414 SE2d 312)

Judge Arnold Shulman.

These three appeals arise from an automobile collision which occurred at the intersection of Lee and West Whitehall Streets in the City of Atlanta ("the City"). The two drivers involved in the collision, appellants Denson and Golden, obtained a jury verdict against the city awarding them damages based on a nuisance theory; however, the trial court subsequently granted the city's motion for judgment notwithstanding this verdict. Case Nos. A91A1174 and A91A1175 are Denson's and Golden's respective appeals from that ruling, while case No. A91A1176 is a cross appeal by the City from the dismissal of a third-party complaint which it had filed against the Metropolitan Atlanta Rapid Transit Authority ("MARTA").

The intersection where the collision occurred is known as the "Lee Street-West Whitehall Street" intersection. Its configuration is somewhat unusual in that to the south of the intersection Lee Street runs one way northbound, while Whitehall Street runs one way southbound. Upon reaching the intersection, Lee Street apparently shifts direction and runs east and west. The intersection is located near the MARTA West End Rail Station, and a series of piers supporting MARTA's elevated tracks occupy the median between northbound Lee Street and southbound West Whitehall Street. The traffic lights at the intersection are governed by a "conflicts monitor" which automatically switches the signals to a flashing mode whenever a disruption of the normal "stop-and-go" pattern is detected. (The signals may also be switched to the flashing mode manually, if necessary.) Such device is mandated by the Manual on Uniform Traffic Control Devices for Streets & Highways (the "manual"), a body of regulations published by the Federal Highway Administration for the purpose of assuring uniform traffic regulation throughout the country, which has been adopted both by the State of Georgia and by the city.

The city's Bureau of Traffic & Transportation ("the Bureau"), which is charged with responsibility for maintaining such traffic sig-

nals, received a report about 9:00 a.m. on November 13, 1986, that the traffic signals at the intersection were flashing red for east-west traffic and yellow for north-south traffic. A repair crew was dispatched; and by 1:00 p.m. the controller mechanism had been replaced, restoring the signal to the normal "stop-and-go" mode. However, at 7:00 the following morning the bureau received a report that the traffic lights at the intersection were again flashing. A repair crew was again dispatched; and the signals were again returned to their normal function, this time through an adjustment to the new controller mechanism.

At some point between 1:00 and 2:00 a.m. on November 15, 1986 (i.e., the following night), a collision occurred at the intersection, between an eastbound and a northbound vehicle. The Atlanta police officer who investigated this accident noted in her report that the signals were operating in the flashing mode at the time, but she assumed that the signals had been switched to that mode intentionally, and she consequently did not report this to the bureau. At approximately 8:00 the next morning, appellant Golden, who was proceeding northbound into the intersection, collided with appellant Denson, who was proceeding eastbound across the intersection. Both drivers observed the flashing signals but were nevertheless unable to see each other until just before the impact.

Denson filed suit against the city on a nuisance theory and against Golden on a negligence theory. Golden cross-claimed against the city on a nuisance theory and counter-claimed against Denson on a negligence theory. The City filed a third-party complaint against MARTA, which moved successfully to dismiss that claim, and Denson thereafter dismissed his counterclaim against Golden. As previously indicated, Denson and Golden ultimately obtained a jury verdict against the city, but the trial court granted the city's motion for judgment notwithstanding that verdict.

1. " ' "(T)he motion for judgment n.o.v. may be granted only when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment. Where there is conflicting evidence, or there is insufficient evidence to make a "one-way" verdict proper, judgment n.o.v. should not be awarded. In considering the motion, the court must view the evidence in the light most favorable to the party who secured the jury verdict. And this approach governs the actions of appellate courts as well as trial courts." ' [Cit.]" *Bryant v. Colvin*, 160 Ga. App. 442, 444 (287 SE2d 238) (1981).

The trial court granted the city's motion for judgment n.o.v. in this case based on a determination that the evidence was insufficient as a matter of law to support a finding that the "malfunctioning" of the traffic light had constituted a nuisance. The maintenance and operation of traffic signals by a municipality normally is considered a

governmental function. *Town of Ft. Oglethorpe v. Phillips*, 224 Ga. 834 (165 SE2d 141) (1968). While a municipality is not liable for negligence in the exercise of a governmental function, it may be liable for injury resulting from the maintenance of a nuisance regardless of whether it arises from the exercise of a governmental or a ministerial function. *Mayor &c. of Savannah v. Palmerio*, 242 Ga. 419 (3) (249 SE2d 224) (1978).

If the act, omission, or defect alleged to constitute a nuisance is merely negligence, no matter how egregious the result, the municipality will not be liable for damage suffered. See *City of Atlanta v. Roberts*, 133 Ga. App. 585 (211 SE2d 615) (1974). In determining whether a condition constitutes a nuisance, as opposed to mere negligence, the following guidelines apply: "(1) The defect or degree of misfeasance must be to such a degree as would exceed the concept of mere negligence. (A single isolated act of negligence is not sufficient to show such a negligent trespass as would constitute nuisance, [Cit.]) (2) The act must be of some duration . . . and the maintenance of the act or defect must be continuous or regularly repetitious [cits.] [,and] (3) Failure of the municipality to act within a reasonable time after knowledge of the defect or dangerous condition. [Cit.]" *City of Bowman v. Gunnells*, 243 Ga. 809, 811 (1) (256 SE2d 782) (1979). See also *Mayor &c. of Savannah v. AMF, Inc..* 164 Ga. App. 122 (295 SE2d 572) (1982); *Carter v. Mayor &c. of Savannah*, 200 Ga. App. 263 (407 SE2d 421) (1991).

The appellants presented expert testimony to the effect that the intersection was dangerous when the signals were operating in the flashing as opposed to the normal "stop and go" pattern because of the visual obstruction created by the MARTA piers. However, to be liable for the maintenance of a nuisance, " 'the municipality must be chargeable with . . . creating a continuous or regularly repetitious condition, which causes the hurt, inconvenience or injury . . . ,' " and with failing to act within a reasonable time after acquiring knowledge of the condition. *Bowman v. Gunnells*, supra, 243 Ga. at 810. While the evidence showed that the signals had previously shifted to the flashing mode for several hours on each of the two mornings immediately prior to the appellants' collision and that the lights had also been operating in that mode at least since approximately 1:00 a.m. the previous night, there is no evidence that anything occurred during any of these periods which would have placed the city on notice that such operation of the signals constituted a dangerous condition. In particular, the occurrence of a single collision at the intersection some seven hours earlier cannot reasonably be deemed to have placed the city on notice of the existence of a dangerous condition, inasmuch as the police officer who investigated that accident was not aware that the lights were malfunctioning and apparently did not believe that

their operation in the flashing mode had anything to do with the accident.

Indeed, in a sense the lights were not malfunctioning, in that they were not giving conflicting or inappropriate signals but were operating in the intended back-up mode. Thus, this was not a situation in which any reasonable person would necessarily have realized by mere observation that a dangerous condition existed. Compare *Town of Ft. Oglethorpe v. Phillips*, supra (municipality held subject to liability for maintenance of a nuisance where mayor, chief of police, and aldermen were aware for period of two weeks that traffic light was flashing either green or red on all sides, and where numerous prior collisions had occurred at the intersection during that period yet no action was taken to repair the defective signal); *Mayor &c. of Savannah v. AMF, Inc.*, supra (holding that protrusion of tree limb onto city street could be considered nuisance where several previous accidents had been caused by other such limbs during the preceding two years); *Carter v. Mayor &c. of Savannah*, supra (holding that absence of a stop sign from heavily trafficked intersection could be considered "inherently dangerous situation" and that one week was sufficient time for the city to have learned of situation and corrected it). Under the circumstances, we hold that the occurrence of a single prior accident at the intersection during the previous night was insufficient as a matter of law to place the city on notice that a nuisance existed, and we consequently hold that the trial court did not err in granting the city's motion for judgment notwithstanding the verdict.

2. The city's cross-appeal is rendered moot by the foregoing and is accordingly dismissed.

*Judgment affirmed in Case Nos. A91A1174 and A91A1175. Appeal dismissed in Case No. A91A1176. Sognier, C. J., McMurray, P. J., Birdsong, P. J., Carley, P. J., Pope, Cooper and Andrews, JJ., concur. Beasley, J., dissents.*

BEASLEY, Judge, dissenting.

1. In considering a judgment notwithstanding the verdict, "the jury is the final arbiter of the facts [so] the verdict must be construed by the trial and appellate courts in the light most favorable to upholding the jury verdict. (Cits.)" *Troy v. Interfinancial, Inc.*, 171 Ga. App. 763, 767 (1) (320 SE2d 872) (1984).

There was evidence from which a jury could find that the city maintained a dangerous condition for a period of time which constituted a nuisance, given that the dangerous condition had existed twice earlier and had been promptly corrected (from which can be inferred an acknowledgment that it was dangerous), that the city knew seven hours before the collision that the dangerous condition existed again (by virtue of its police officer's knowledge, gained in in-

vestigation of a previous collision that occurred under the very same condition), and that although a crew was available to eliminate the danger by returning the traffic signals to the red-yellow-green mode (which was the standard signal for this vision-obstructed, unusually configured intersection), no crew was dispatched until after the collision at bar materialized.

"[O]rdinarily whether a nuisance exists is a question of fact for a jury (cits.). . . ." *City of Bowman v. Gunnells*, 243 Ga. App. 809, 811 (2) (256 SE2d 782) (1979). The Supreme Court recognized in that case that there is not "a precise legal definition of nuisance that would apply to all situations." The best that it could do was to synthesize "guidelines" from the prior appellate cases in this State. Applying them to the evidence in this case and allowing all reasonable inferences, the jury could find that a nuisance existed. It is a judgment call here, and neither the trial judge nor we can substitute our judgment for that of the jury, because the law of nuisance does not compel a finding of "no nuisance."

The first guideline is that "[t]he defect or degree of misfeasance must be to such a degree as would exceed the concept of mere negligence." *City of Bowman*, supra at 811. The flashing lights, which did not signal traffic which was headed in one direction to remain stopped until intersecting traffic was similarly signalled, was an admittedly dangerous condition under the circumstances. The view of drivers coming in either direction was totally obscured by the MARTA piers, and one had to depend on the traffic lights as best one could rather than rely merely on one's ability to see approaching traffic. This was especially so at night, when the dangerous condition was created. The degree of dangerousness was more acute than existed in the *City of Atlanta v. Roberts*, 133 Ga. App. 585 (211 SE2d 615) (1974). For one thing, the dangerousness had been demonstrated by an earlier collision. For another, the lights were operating in such a manner as to invite passage by a driver's having to take a chance that intersecting traffic was not approaching. The physical layout of the streets and the structures erected in the vicinity of the intersection enhanced the degree of dangerousness from that which might be present at an ordinary intersection.

The second guideline is that "[t]he act must be of some duration . . . and the maintenance of the act or defect must be continuous or regularly repetitious." *City of Bowman*, supra at 811. Although four hours was held insufficient in *Roberts*, supra, here the city knew that another collision had occurred under these conditions, at least seven hours earlier, and did not correct the lights before the city traffic on a mid-week morning commenced. A collision was virtually invited. It did not take a long time for the inadequate traffic signals to be working in only the flashing mode before either of the two collisions oc-

curred.

This leads to the third guideline, "[f]ailure of the municipality to act within a reasonable time after knowledge of the defect or dangerous condition." *City of Bowman,* supra at 811. Considering that the city had a crew available to correct the lights, that it had experienced the same situation twice earlier, that it knew of another collision occurring under these conditions, and that there was no reason for not promptly dispatching a crew, whether it acted within a reasonable time is governed not by an established legal mandate but rather is for a jury to discern. Here there is sufficient evidence "to show the active operation and maintenance of a dangerous condition and knowingly allowing such condition to continue to the injury of the plaintiff(s)." *Town of Fort Oglethorpe v. Phillips,* 224 Ga. 834, 838 (165 SE2d 141) (1968).

Applying the law governing judgments notwithstanding the verdict, which in the majority opinion is quoted from *Bryant v. Colvin,* 160 Ga. App. 442, 444 (287 SE2d 238) (1981), and is repeated in *Troy,* supra, Denson and Golden are entitled to judgments on the verdicts.

2. I would affirm the dismissal of the city's third-party complaint against MARTA.

DECIDED DECEMBER 4, 1991 —
RECONSIDERATION DENIED DECEMBER 19, 1991 — 

*Branch, Pike, Ganz & O'Callaghan, Gregory J. Digel, Keith J. Reisman, Mitchell & Hersh, Bruce E. Mitchell,* for Denson.

*Eric C. Silver,* for Golden.

*Michael V. Coleman, Kendric E. Smith, Sarah I. Mills, Lisa E. Steinmetz,* for City of Atlanta.

*Carter & Ansley, Robert A. Barnaby II,* for MARTA.