A00A2503. CROSBY v. KENDALL et al.
(545 SE2d 385)

JOHNSON, Presiding Judge.

This lawsuit arose from a series of financial transactions in which the appellees[1] loaned money to certain corporations[2] for use in purchasing, renovating, and selling residential real estate. From 1991 through the end of 1995, the appellees made approximately 120 loans to the corporations, 64 of which were the subject of the appellees' lawsuit.

Samuel Les Caldwell controlled these corporations and made the vast majority of the business decisions for these entities. James

---

[1] Patricia Kendall, Janet Moore, Ozro Moore, Donald Stephenson, Melanie Stephenson, E. H. Hovey, Ann Hovey, Julie Franciskato, John Persall, Barbara Persall, Carl Moore, and Jerilyn Moore.

[2] General Realty Investment Corporation, Peachtree Realty, Inc., and AAA Realty, Inc. (collectively "the corporations").

Babb, a bookkeeper, acted as an agent for the corporations, and his duties included recruiting investors and serving as a liaison between Caldwell and the investors. Marc Slavny and Marci Caldwell had smaller roles in the corporations. Appellant David Crosby, an attorney and part-time DeKalb County magistrate, served as an escrow agent for some, but not all, of the loan transactions. With the exception of Crosby, all of the above-named individuals and corporations settled prior to trial.

The evidence shows that in January 1991, Caldwell retained Crosby as the escrow agent for some of the loan transactions between the various defendants and the appellees. Caldwell and Babb told the appellees that Crosby was a practicing attorney and a sitting judge, that he would serve as the escrow agent for the transactions, and that one of his major duties was to ensure that the appellees' funds were not released until the requirements contained in the escrow agent instructions had been completed.

Each loan was memorialized by the following documents: (1) a promissory note; (2) a copy of the purchase agreement for the property; (3) an investor summary; (4) a limited power of attorney from the appellees to Crosby; (5) an assignment of purchase agreement or deed to secure debt; and (6) escrow agent instructions.

Although the language of the escrow agent instructions varied slightly, all versions imposed substantially the same obligations upon Crosby. Crosby was required to perform the following acts:

> 1. Verify the end value of the property pursuant to a recent appraisal; 2. Obtain proper execution of the enclosed Promissory Note; 3. Verify that the principal amount of the Promissory Note; together with the remaining amount required to purchase the property; does not exceed 80% of the end value of the property; 4. Obtain [the corporation's] Purchase Agreement plus an Assignment of [the corporation's] contract rights to purchase the property from [the corporation] to the undersigned; 5. Verify that the term of the Promissory Note is less than the term of the assigned Purchase Agreement plus any extension authorized under the Purchase Agreement; and 6. Obtain a properly executed Deed to Secure Debt for use as substituted collateral to secure the terms of the Note in the event that borrowers purchase the property and take title to it.

The appellees' expert testified that his review of some of Crosby's files revealed that many of the documents required to perform these functions were absent. The expert further testified that in many cases, contrary to the escrow instructions, Crosby failed to verify that

the term of the promissory note was less than the term of the assigned purchase agreement plus any extension authorized under the purchase agreement. The expert further testified that in many cases, Crosby failed to obtain a properly executed deed to secure debt for use as substituted collateral and failed to verify that the principal amount of the note, together with the remaining amount required to purchase the property, did not exceed 80 percent of the end value of the property as the escrow instructions required.

Crosby himself admitted that some of his files were incomplete. He further admitted that he had no communication with the appellees until February 1996, when some of the appellees requested to meet with him and review his files. On the other hand, Crosby admitted he had frequent communications with Caldwell regarding these transactions. And, he acknowledged having prior attorney-client relationships with Caldwell. In addition, while acting as escrow agent for the appellees, Crosby incorporated and served as registered agent for Peachtree Realty, Inc., one of Caldwell's corporations and a defendant corporation in this lawsuit.

While Crosby maintains that he did not draft the escrow instructions, he testified at trial that prior to any of the transactions, he reviewed and revised the instructions that were subsequently provided to the appellees. He admitted providing a form promissory note to Caldwell and drafting security deeds for the transactions at issue. He further acknowledged that he filed 12 security deeds in 1993 without the appellees' knowledge because Caldwell was having problems with the Internal Revenue Service. Crosby admitted that his actions in filing the deeds violated his escrow instructions.

In January 1996, when the appellees began their investigation, they learned that their collateral was either nonexistent or worthless. Contrary to the terms of the escrow instructions, Crosby failed to confirm that the term of each promissory note was longer than the term of the purchase agreement, so the promissory notes expired after the right to purchase expired. In addition, the evidence showed that in more than a few instances, use of the same property as collateral for multiple loans caused the loan-to-value ratio to greatly exceed the 80 percent escrow instruction.

During trial, the appellees argued that Crosby breached the fiduciary duties he owed to them by (1) breaching his agreement with them; (2) drafting or approving transaction documents that were ambiguous or designed to protect the corporations to the detriment of the appellees; (3) failing to disclose potential conflicts of interest in Crosby serving as escrow agent and holding their limited power of attorney based on his prior and ongoing relationship with Caldwell and/or the corporations; (4) failing to maintain the neutrality required of a dual agent; (5) seeking and following directions from

Caldwell regarding the escrow instructions while failing to communicate with the appellees or informing them that he could not fulfill his obligations as escrow agent; and (6) either intentionally or negligently failing to fulfill the obligations imposed upon him by the escrow instructions. The jury awarded the appellees over $500,000 in compensatory damages, as well as $100,000 in punitive damages. Crosby contends the trial court committed a number of errors during the course of this trial, including errors in its jury instructions and in its failure to grant three of Crosby's motions for directed verdict. We find no error.

1. Crosby contends that the trial court erred in instructing the jury that an attorney acting as an escrow agent "must meet the standards of the legal profession, including those set forth in the code of professional responsibility" and in instructing the jury on the State Bar of Georgia conduct standards governing attorneys. Whether the fiduciary duty an escrow agent owes to a principal encompasses standards of professional conduct where the agent is a practicing attorney has not been addressed in this state. And, we need not address the issue in this case because any error in the giving of these instructions was harmless.

The question presented to the jury was whether Crosby violated his fiduciary duty as an escrow agent to the appellees. Regardless of the standards of professional conduct which may or may not be relevant, the evidence in this case, in our opinion, demanded a finding that Crosby violated his fiduciary duty as escrow agent to the appellees.

The evidence showed that the escrow agent instructions given to Crosby were not followed on a number of occasions, and Crosby admits that on at least one occasion he felt his actions violated the escrow instructions. While Crosby blames Caldwell for the fact that he could not obtain many of the documents required by the escrow agent instructions, the fact remains that Crosby failed to comply with the escrow agent instructions. "The verdict for the [appellees] being demanded by the evidence, the intermediate errors, if any, . . . in certain instructions of the court . . . are harmless, and require no specific consideration."[3]

2. Crosby maintains that the trial court erred in failing to grant his motions for a directed verdict, and subsequent motion for a judgment notwithstanding the verdict or for a new trial, regarding several of the appellees' claims. In considering a motion for a j.n.o.v. or a motion for a new trial, the trial court and the appellate court must

---

[3] *Davis v. Davis*, 211 Ga. 714, 716 (88 SE2d 377) (1955); see *Hankinson v. Rackley*, 177 Ga. App. 734, 736 (2) (341 SE2d 231) (1986); *Parsons v. Grant*, 95 Ga. App. 431, 436 (3) (98 SE2d 219) (1957).

review the evidence in the light most favorable to the party who secured the jury verdict.[4] Likewise, in considering a ruling on a motion for a directed verdict, the evidence must be construed most favorably to the party opposing the motion.[5] We review the trial court's denial of a motion for a directed verdict using the "any evidence" standard.[6] This standard of review requires Crosby "to show that there was no conflict in the evidence as to any material issue, and the evidence introduced, with all reasonable deductions therefrom, demanded the verdict sought."[7]

(a) Crosby contends that the trial court erred in failing to grant his motions regarding the appellees' loan transactions funded by Reliance Trust Corporation.[8] According to Crosby, no valid escrow was created because Crosby never received either the documents needed to comply with the escrow instructions or the funds that were to be used to purchase the properties in the RTC transactions. However, contrary to Crosby's assertion, there was sufficient evidence from which the jury was authorized to conclude that Crosby breached the fiduciary duties he owed to the appellees regarding the RTC transactions.

Crosby admitted that he received escrow agent instructions for the RTC transactions. He further acknowledged that the instructions authorized him to contact the appellees if any questions regarding the transactions arose. Nevertheless, Crosby never contacted either the appellees or RTC when questions arose about the transactions. Instead, Crosby called Caldwell and relied on his statements regarding the transactions. Clearly, Crosby's reliance on Caldwell's statements was misplaced. Equally clear is the fact that Crosby did not meet the requirements of the escrow instructions.

Crosby's contention that he did not owe the appellees a fiduciary duty with regard to the RTC transactions lacks merit in light of his actions in calling Caldwell with questions about the transactions and his attempts to obtain the required documents from Caldwell. These actions provide evidence that Crosby knew he had a fiduciary duty with respect to these transactions. Moreover, the escrow instructions regarding these transactions authorized him to contact the appellees if any questions regarding the transactions occurred. Had Crosby contacted the appellees regarding his concerns about the transactions or his inability to obtain the required documents from Caldwell,

---

[4] See *Denson v. City of Atlanta*, 202 Ga. App. 325, 326 (1) (414 SE2d 312) (1991).

[5] See *Mattox v. MARTA*, 200 Ga. App. 697 (1) (409 SE2d 267) (1991).

[6] Id. at 698.

[7] (Citation and punctuation omitted.) *Wheat Enterprises v. Redi-Floors*, 231 Ga. App. 853, 854 (1) (501 SE2d 30) (1998).

[8] The funds loaned by the appellees came from two sources, their personal funds and Individual Retirement Accounts. RTC was the custodian of the IRA funds.

it is possible that the appellees' losses relating to the RTC transactions could have been minimized or prevented. We cannot say that the trial judge improperly denied Crosby's motion for a directed verdict or motion for a j.n.o.v. or a new trial in this regard under the any evidence standard.

(b) Crosby further contends that the trial court erred in denying his motions regarding the appellees' claim for punitive damages. It is clear that a breach of a fiduciary duty may warrant the imposition of punitive damages.[9] However, Crosby argues that punitive damages were not warranted because he did not intend to injure the appellees and because he never made any misrepresentations to the appellees. Whether punitive damages should be awarded for a breach of fiduciary duties is ordinarily a question for the jury, and the controlling question for the appellate court is whether there was any evidence to support their award.[10]

OCGA § 51-12-5.1 permits punitive damages to be awarded where a plaintiff proves by clear and convincing evidence that the defendant's actions showed wilfull misconduct, malice, fraud, wantonness, oppression, "or that entire want of care which would raise the presumption of conscious indifference to consequences." The phrase "conscious indifference to consequences" means an intentional disregard of the rights of another, knowingly or wilfully disregarding such rights.[11]

The jury was authorized to conclude that evidence that Crosby communicated solely with Caldwell and failed to procure the necessary documents from him to fulfill his escrow agent duties showed a conscious disregard for consequences, especially in light of Crosby's past attorney-client relationships with Caldwell. Crosby could have contacted the appellees at any time and told them that he was unable to procure the necessary documents. He could have looked at his own paperwork and seen that the escrow agreement requirements were not being met. Instead, he blindly relied on statements made by a past, and possibly present, client to the detriment of those he represented as an escrow agent. Crosby knew he was not fulfilling the requirements of the escrow agreements, and he admitted that on at least one occasion he acted contrary to the escrow agent agreements in his attempt to help Caldwell. A jury question was presented,[12] and

---

[9] See *Watkins & Watkins, P.C. v. Williams*, 238 Ga. App. 646, 649 (6) (518 SE2d 704) (1999); *Home Ins. Co. v. Wynn*, 229 Ga. App. 220, 225 (10) (493 SE2d 622) (1997).

[10] See *Home Ins. Co.*, supra at 223 (2); *Caswell v. Jordan*, 184 Ga. App. 755, 760 (7) (362 SE2d 769) (1987) (physical precedent only).

[11] *Home Ins. Co.*, supra at 225 (10).

[12] See *Time Warner Entertainment Co. v. Six Flags Over Ga.*, 245 Ga. App. 334, 356 (6) (a) (537 SE2d 397) (2000) (evidence that defendants were aware of their fiduciary duty to the plaintiffs but consciously and intentionally disregarded that duty supported a jury award for

it was not error for the trial court to instruct the jury regarding the issue of punitive damages.

(c) Crosby contends that the trial court erred in failing to grant his motions regarding any loan transactions that occurred more than two years prior to the filing of the lawsuit. He bases this argument on the fact that the trial court's jury charges on attorney standards of conduct limited this case to a legal malpractice action, and the statute of limitation for a noncontractual action against an attorney sounding in tort is two years.[13] Crosby's contention lacks merit.

The appellees brought claims for legal malpractice and breach of fiduciary duty arising from Crosby's breach of the escrow agent agreements. The trial court granted Crosby's motion for a directed verdict regarding the appellees' legal malpractice claims, specifically excluding these claims from jury consideration. Whether the trial court's jury instructions regarding attorney standards of care were or were not proper, they did not, contrary to Crosby's argument, revive the appellees' claims for legal malpractice. The trial court properly held that the applicable statute of limitation for the appellees' claims of breach of fiduciary duty, which arise out of a breach of the escrow agent agreements, was six years pursuant to OCGA § 9-3-24.

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

DECIDED FEBRUARY 6, 2001 — ▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

*Louis K. Polonsky, Matthew D. Crosby,* for appellant.
*Taylor W. Jones & Associates, Taylor W. Jones, Jenny E. Jensen,* for appellees.

---

punitive damages); *Byrne v. Reardon,* 196 Ga. App. 735, 736 (3) (397 SE2d 22) (1990).
 [13] See OCGA § 9-3-33.
 [1] 152 Ga. App. 726 (1) (263 SE2d 700) (1979).