A04A2065. HERETYK v. P. M. A. CEMETERIES, INC. et al.
(611 SE2d 744)

MIKELL, Judge.

In this appeal, we affirm the grant of partial summary judgment to P. M. A. Cemeteries, Inc., its chief executive officer, Eli Jacobson, and its vice-president, Frances Jacobson (collectively, "PMA"), in Chester Heretyk, Jr.'s suit to recover compensation allegedly owed to him from 1982, based on the expiration of the four-year statute of limitation.

1. Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[1] A de novo standard of review applies to an appeal from a grant of summary judgment, and the evidence, including all reasonable conclusions and inferences drawn therefrom, is viewed in the light most favorable to the nonmovant.[2] However,

> [s]ummary judgment law does not require the movant to show that no issue of fact remains but only that no genuine issue of material fact remains; and while there may be some shadowy semblance of an issue, the case may nevertheless be decided as a matter of law where, as in this case, the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion.[3]

In the case sub judice, the record, viewed most favorably to Heretyk, shows that PMA was established in 1982 with three stockholders. Heretyk received 50 shares, Jacobson was issued 475 shares, and a third party, Ed Dalton, received 475 shares. Originally, Dalton was president, Jacobson was vice-president, and Heretyk was secretary/treasurer. PMA acquired a cemetery, Griffin Memorial

---

[1] OCGA § 9-11-56 (c).

[2] *Matjoulis v. Integon Gen. Ins. Corp.*, 226 Ga. App. 459 (1) (486 SE2d 684) (1997).

[3] (Citation and punctuation omitted.) *Walker v. Jack Eckerd Corp.*, 209 Ga. App. 517, 524 (3) (434 SE2d 63) (1993).

Gardens, where Heretyk worked from 1982 until August 2000, when Jacobson allegedly terminated him.

PMA's corporate minutes reflected that Heretyk and Eli Jacobson were to be paid annual salaries of $32,000 and $35,000, respectively. However, according to Heretyk's deposition, neither man ever received any such sum. Heretyk alleged that he received only $6,000 of the salary each year and that PMA owed him the balance of $26,000 per year for 17 years.[4] Heretyk filed suit on October 9, 2000, asserting theories of breach of contract, unjust enrichment, breach of fiduciary duty, fraud, and alter ego liability, as well as trover and conversion. According to the complaint, PMA issued 24,490 shares of stock to Heretyk in 1995, valued at $312,000, as compensation for the salary he was owed, but the issuance of the shares was set aside by court order dated October 19, 1999, as an illegal dilution of Dalton's stock.

PMA answered and asserted numerous affirmative defenses, including the statute of limitation. On December 6, 2002, PMA moved for partial summary judgment, asking the trial court to dismiss Heretyk's claims for unpaid salary and unjust enrichment for compensation owed prior to October 9, 1996, based on the expiration of the applicable four-year statute of limitation.[5] Heretyk claimed that the statute of limitation should be tolled due to PMA's fraud. The trial court determined that no genuine issue of fact remained with regard to PMA's alleged fraud and granted partial summary judgment to PMA. This appeal followed.

Heretyk argues that he presented sufficient evidence to create a genuine issue of fact on his claims of unjust enrichment and "unpaid salary" prior to October 9, 1996. His claim that the statute of limitation should be tolled due to PMA's fraud is premised upon OCGA § 9-3-96, which provides: "If the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud."

> This statute has three elements: (1) actual fraud involving moral turpitude on the part of the defendant; (2) the fraud must conceal the existence of the cause of action from the plaintiff, thereby debarring or deterring the knowing of the cause of action; and (3) plaintiff exercised reasonable diligence to discover the cause of action, notwithstanding the

---

[4] Heretyk deposed that he and Eli Jacobson divided the earnings from the cemetery evenly.

[5] OCGA §§ 9-3-25; 9-3-26. See also *Engram v. Engram*, 265 Ga. 804, 806 (2) (463 SE2d 12) (1995) (four-year statute of limitation applies to unjust enrichment claims).

failure to discover within the statute of limitation.[6]

In his appellate brief, Heretyk apparently abandons his claim that PMA committed actual fraud involving moral turpitude. He concedes that the fraud which he must show in order to toll the statute of limitation "is altogether different from the many irrelevant instances of fraud catalogued in his [a]ffidavits, and portions of his [p]leadings." Instead, Heretyk argues that summary judgment was wrongly granted to PMA because he produced evidence of "a fraudulent breach of a duty to disclose that exists because of a relationship of trust and confidence," which will similarly toll the running of the statute of limitation.[7]

> A confidential relationship between the parties imposes a greater duty on a defendant to reveal what should be revealed, and a lessened duty on the part of a plaintiff to discover what should be discoverable through the exercise of ordinary care. But the fraud itself — the defendant's intention to conceal or deceive — still must be established, as must the plaintiff's deterrence from bringing suit.[8]

In this regard, even if a fiduciary relationship existed between Heretyk and PMA, Heretyk failed to offer evidence of fraud. He asserts only that he justifiably relied on PMA's representations that he would be paid all monies owed to him. A promise of future payment, without more, does not constitute fraud. "The representation that plaintiff would receive compensation in the future is not as to an existing or past fact, and does not give rise to an action for fraud."[9] Having failed to offer evidence of actionable fraud, Heretyk's arguments fail.

2. As to Heretyk's remaining claims, we do not address PMA's argument that Heretyk's alter ego liability theory of recovery against the Jacobsons in their individual capacities is meritless as this argument was not ruled upon by the trial court.

*Judgment affirmed. Blackburn, P. J., concurs. Barnes, J., concurs and concurs specially.*

---

[6] *Charter Peachford Behavioral Health System v. Kohout*, 233 Ga. App. 452, 457 (c) (504 SE2d 514) (1998), citing *Jim Walter Corp. v. Ward*, 245 Ga. 355, 357 (265 SE2d 7) (1980).

[7] (Punctuation omitted.) *Goldston v. Bank of America Corp.*, 259 Ga. App. 690, 693 (577 SE2d 864) (2003), citing *Hunter, Maclean, Exley & Dunn v. Frame*, 269 Ga. 844, 846 (1) (507 SE2d 411) (1998).

[8] *Hunter*, supra at 849 (1).

[9] (Citations omitted.) *Clinton v. State Farm &c. Ins. Co.*, 110 Ga. App. 417, 419 (1) (138 SE2d 687) (1964). Accord *Strickland v. Levy's of Savannah*, 112 Ga. App. 665, 666 (145 SE2d 831) (1965).

BARNES, Judge, concurring specially.

I concur fully with the majority opinion, but write specially to highlight certain facts that I believe are significant in this case.

Although Heretyk contends that he did not get a promised annual salary of $32,000, the record is replete with evidence that he received compensation likely valued much more than the $6,000 annual salary he claims he received. The evidence shows that he and Jacobson routinely split any cash that came into the cemetery. When asked if the amount was more than $25,000, Heretyk had no idea. He also said that he received a check each week, which he sometimes wrote out to himself. He said that the amount was sometimes $150, and "some weeks it was less, other weeks it was more." Heretyk also admitted that PMA kept very "loose books" and we "put anything down we wanted." He also said that "whoever wanted to" kept the books. Six thousand dollars merely seems to be the figure Heretyk elected to report as income to the IRS each year.

The evidence also shows that, while Jacobson and Heretyk initially had a father-son like relationship, it became increasingly contentious because Jacobson believed that Heretyk was taking money from the company. Heretyk was also bitter because he believed that he was cheated out of proceeds due him after the cemetery was sold, and that he had essentially "supported" Jacobson for 18 years. He said that Jacobson had promised him if he cooperated with Jacobson's plan to oust Dalton as company president, he would own an equal share of the company. Heretyk had initially agreed to vote his five percent of the shares with Dalton to sell the cemetery and receive 25 percent of the profits. Jacobson convinced him to sell his shares to Jacobson for $10 until he "squeezed [Dalton] out of this corporation . . . then we would re-adjust our shares 50/50," and according to Heretyk, this never happened. He also admitted that false papers were "going around," and they were "re-issuing papers and changing papers around, [and] changing documents to suit one's needs at that time."

Therefore, I agree with the majority that Heretyk has failed to show that the statute of limitation should be tolled due to PMA's fraud, and thus he is precluded from recovering unpaid salary prior to October 9, 1996.

DECIDED MARCH 9, 2005.

*Lloyd J. Matthews*, for appellant.

*Gray, Rust, St. Amand, Moffett & Brieske, James T. Brieske,* for appellees.