A06A0438. WAYCROSS UROLOGY CLINIC, P.C. et al. v. JOHNSON et al.
(630 SE2d 807)

BARNES, Judge.

William D. Johnson and Karen Johnson sued Waycross Urology Clinic, P.C. and Dr. Ronald L. Tomlinson for medical malpractice and loss of consortium relating to surgery Tomlinson performed in 1987. The defendants answered, denying liability, and moved for summary judgment following discovery. The trial court denied the motion but certified the issue for immediate review, and this court granted Tomlinson's application for interlocutory appeal. Because this action is barred by the running of the five-year statute of repose, we reverse.

William Johnson sought treatment from Tomlinson for a kidney stone in 1987. The doctor tried to retrieve the stone nonsurgically with a scope, but was unsuccessful. On July 2, 1987, Tomlinson removed the stone by making an abdominal incision and then cutting into Johnson's ureter, which is the tube running between the kidney and bladder where the stone was lodged. Before stitching the incision in the ureter, Tomlinson placed a stent, which is essentially a hollow tube, inside the ureter and attached it with a single dissolving stitch. He then closed the incisions, leaving a temporary drain through the abdomen. After seven days in the hospital, the temporary drain was removed and Johnson was discharged with instructions to return to Tomlinson in thirty days. Nine days after he was discharged, which was fourteen days after the surgery, Johnson called the doctor to report that he had passed the stent, and the doctor told him to bring the device to his follow-up appointment. At that appointment, Tomlinson removed the abdominal staples, checked his urine, and discharged him with no follow-up instructions.

Johnson experienced no problems with his kidneys or bladder after the surgery. Twelve years later, in 1999, Johnson fell and injured his back. After some tests in the emergency room, his physician determined that his left kidney was enlarged. Subsequent tests determined that the kidney was not functioning at all, because an obstruction had developed in the ureter, and Johnson ultimately had the kidney removed. He sued Tomlinson and his practice, alleging that the doctor committed malpractice by not replacing the stent so it remained in place for 30 days, and in not advising him to have a follow-up test some months after the surgery to ensure that the ureter was not blocked. He amended his complaint to allege that Tomlinson intentionally concealed the facts that the stent needed to be replaced and that he needed follow-up.

Tomlinson filed two motions for summary judgment. In the first, a motion to dismiss or motion for summary judgment filed September 19, 2001, he contended that the complaint was barred by the running of the two-year statute of limitation and the five-year statute of repose, and that he was not estopped from relying on the latter due to any fraud on his part. The trial court denied the motion on January 15, 2002, finding that the plaintiff's expert witness presented evidence that Tomlinson deviated from the standard of care by not informing Johnson that the stent needed replacing, and thus a question of fact existed "about what Dr. Tomlinson knew and what he had a duty to disclose."

In his second motion for summary judgment, filed April 17, 2003, Tomlinson argued that the plaintiff's expert's testimony that Tomlinson violated the applicable standard of care did not create a question of fact regarding fraud. The parties had a hearing on June

27, 2003. On June 14, 2005, the trial court denied the motion, holding that "the issue of whether there is sufficient evidence to support fraudulent concealment is not a proper matter for summary adjudication." The court also found that the evidence created "an inference which suggests that Dr. Tomlinson may not have disclosed all that he should have related to the possibility of an obstruction forming and the need for follow-up treatment," and further found that Tomlinson's office manager testified that Johnson's medical records were destroyed four months after he returned to Tomlinson upon learning that his kidney had died. In conclusion, the court said,

> it cannot be said that there is no dispute as to the material facts related to the issue of whether Dr. Tomlinson knowingly failed to reveal evidence of his own negligence and the need for subsequent treatment to Mr. Johnson. The question of whether Dr. Tomlinson's statements or omissions constitute a fraud that equitably estops the defendants from asserting the defense of the statute of repose cannot be resolved on summary judgment but must be left for a jury to determine.

On appeal we review the trial court's grant of summary judgment de novo to determine whether the evidence, viewed in the light most favorable to the nonmoving party, demonstrates a genuine issue of material fact. Summary judgment is proper only when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Preferred Real Estate Equities v. Housing Systems*, 248 Ga. App. 745 (548 SE2d 646) (2001).

The question in this case is whether the plaintiff has presented sufficient evidence that Tomlinson committed fraud in 1987, so that the running of the five-year statute of repose does not bar his claim. If it does, then we need not consider whether Johnson filed suit within two years of the date he discovered that his kidney had died, because, absent fraud, the statute of repose imposes an absolute limit on the time within which an action may be brought. *Wright v. Robinson*, 262 Ga. 844, 845 (1) (426 SE2d 870) (1993). "Because the statute of repose is unrelated to the accrual of the cause of action, it runs from the date on which the negligent or wrongful act or omission occurred without regard to when the injury arising from the negligent or wrongful act or omission occurred or was discovered. [Cits.]" (Punctuation omitted.) *Christian v. Atha*, 267 Ga. App. 186, 187 (598 SE2d 895) (2004).

"While statutes of repose cannot be tolled, actual fraud concealing the negligence can estop the defendant from asserting the defense of the statute of repose through the doctrine of equitable estoppel." *Esener v. Kinsey*, 240 Ga. App. 21, 24 (522 SE2d 522) (1999). "To make

out a claim of equitable estoppel, the plaintiff must show fraud by offering evidence of a known failure to reveal negligence." *Craven v. Lowndes County Hosp. Auth.*, 263 Ga. 657, 659 (3) (437 SE2d 308) (1993).

> Fraud sufficient to toll the statute must be actual rather than constructive, except when there exists a confidential relationship between the parties, such as that between physician and patient. Where persons sustain toward another a relation of trust and confidence, their silence when they ought to speak is as much a fraud in law as an actual affirmative false representation. The question of the existence of such fraud, and the related question of the patient's exercise of diligence in discovering the injury and the fraudulent concealment, are ordinarily for jury determination.

(Citations and punctuation omitted.) *Shved v. Daly*, 174 Ga. App. 209, 210 (329 SE2d 536) (1985). "One of the elements of fraud is that defendant know that the representation is false." (Citations and punctuation omitted.) *Lasoya v. Sunay*, 193 Ga. App. 814, 816 (1) (389 SE2d 339) (1989).

Johnson contends that there is a genuine issue of material fact as to the existence of fraud in this case, asserting that Tomlinson knew he should have left the stent in for 30 days, and should have told him to return for a follow-up appointment to make sure his ureter was working properly. These assertions, however, are not supported by the record.

Tomlinson testified he did not think the stent had to remain in place for 30 days, and that he had no reason to advise Johnson to return for another follow-up at a later time. Stents were not commonly used in 1987 in uncomplicated cases, which Johnson's was, but Tomlinson had observed that their use in complicated cases seemed to speed the healing process, so he began using them for uncomplicated cases as well. He used the stent to prevent urine from leaking through the incision in the ureter while it healed, not to prevent obstruction. His discharge summary stated that Johnson would return to his office in 30 days to have the stent removed because by that time, he should have either passed it or it would be in his bladder; if the latter, Tomlinson would retrieve it with a cystoscope. The amount of time it took for the stitch that held the stent in place to dissolve varied from patient to patient, usually taking two to three weeks. As Johnson was no longer leaking urine when he passed the stent, there was no reason to replace it, which would have been a major procedure, possibly requiring general anesthesia. Tomlinson also testified, as did his two expert witnesses, that the standard of

care in 1987 did not include following up with patients after this type of surgery to ensure no blockage occurred. A blockage of this type was uncommon, and it was very rare for a patient not to experience some symptoms when it did occur.

Johnson's expert witness testified that Johnson's 1987 surgery was complicated, as indicated by Tomlinson using a stent, which was not ordinarily used in uncomplicated cases. He testified that Tomlinson violated the applicable standard of care by failing to replace the stent for a full 30 days, because the discharge note indicated that Tomlinson thought the stent should remain in place for 30 days and it came out earlier than he planned. He also thought Tomlinson violated the applicable standard of care by failing to instruct Johnson to return in a few months to undergo an x-ray and dye procedure that would determine whether the ureter had healed properly.

At best the testimony of Johnson's expert creates an issue of fact as to whether Tomlinson was negligent. Nothing in the record reflects that Tomlinson knew at any time that his treatment or advice to Johnson was in error, nor is there any evidence that he fraudulently withheld such information from Tomlinson. *Osburn v. Goldman*, 269 Ga. App. 303, 306 (1) (603 SE2d 695) (2004). As Tomlinson argues in his brief, he had nothing to cover up or conceal at Johnson's last office visit and no reason to commit fraud.

Johnson contends that the fact that Tomlinson "destroyed" his medical records creates an inference that Tomlinson committed fraud because "there is no way for him to know what Mr. Johnson's condition was when he returned to have his stitches taken out or what transpired with regard to Mr. Johnson." The record shows that Tomlinson's office manager purged the patient files whenever the office needed more space. If a patient had not been seen or heard from in at least seven years, then that patient's file was shredded. Johnson did not consult Tomlinson between 1987 and 1999, a period of 12 years.

Contrary to the trial court's finding and Johnson's argument on appeal, the office manager did not testify that she destroyed Johnson's records four months after he returned with his diagnosis of a nonfunctional kidney. What she said was that the last time she destroyed records was in 1999, when the office moved, but had also destroyed records earlier, in 1996 or 1997. She did not know when Johnson's case was shredded, but it was before his visit or she would have found his file when he returned. Even Johnson's own expert witness testified that he only kept patient records for five years, and thus absence of the records creates no inference of fraud.

Because the record shows no evidence establishing a genuine issue of fact as to whether Tomlinson committed fraud and concealed Johnson's cause of action, deterring him from discovering the truth,

the trial court erred in denying summary judgment to Tomlinson and the Waycross Urology Clinic.

*Judgment reversed. Andrews, P. J., and Bernes, J., concur.*

DECIDED MAY 4, 2006 — ■■■■■■■■■

*Coleman, Talley, Newbern, Kurrie, Preston & Holland, Wade H. Coleman, Edward F. Preston,* for appellants.
*Berrien L. Sutton, Ronald W. Hallman,* for appellees.