A07A0061. COCHRAN MILL ASSOCIATES v. STEPHENS.
(648 SE2d 764)

MIKELL, Judge.

On March 7, 2000, Cochran Mill Associates (hereinafter "Cochran Mill," "appellant" or the "partnership"), a Georgia general real estate partnership formed to purchase undeveloped land in south Fulton County, sued its former managing partner, John A. Stephens a/k/a Jack Stephens and d/b/a Adanac Properties, alleging various claims including breach of fiduciary duty, fraud, negligence, and conversion, arising from Stephens's promotion of the land deal and his alleged mismanagement of the partnership from 1989 until he was removed in 1999. With regard to the land deal, Cochran Mill

---

sought to recover part of the purchase price based on its claim that Stephens unlawfully inflated the price. Cochran Mill dismissed that action on May 20, 2003, and filed the instant renewal action on November 18, 2003, asserting similar claims. Cochran Mill filed an amended complaint on February 24, 2005, adding a claim for violation of Georgia's Racketeer Influenced and Corrupt Organizations (RICO) Act based on Stephens's conversion and theft of partnership funds. Stephens moved for summary judgment. The trial court granted Stephens's motion on Cochran Mill's RICO claim and all claims related to the land purchase deal, including breach of fiduciary duty, misrepresentation, and fraud, concluding that the claims were barred by the applicable statutes of limitation. As to Cochran Mill's claims for negligence, conversion and breach of fiduciary duty related to Stephens's alleged mismanagement of the partnership, the trial court granted partial summary judgment finding (1) that Cochran Mill's claims for negligence and conversion based upon Stephens's actions on or before March 7, 1996, were barred by the applicable statutes of limitation; and (2) that Cochran Mill's claim for breach of fiduciary duty based upon Stephens's actions on or before March 7, 1994, was barred by the six-year statute of limitation. Cochran Mill appeals these rulings. For the reasons set forth below, we affirm.

"Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."[1] We apply a de novo standard of review to an appeal from a grant of summary judgment, and view the evidence, including all reasonable conclusions and inferences drawn therefrom, in the light most favorable to the nonmovant.[2] However,

> summary judgment law does not require the movant to show that no issue of fact remains but only that no genuine issue of material fact remains; and while there may be some shadowy semblance of an issue, the case may nevertheless be decided as a matter of law where, as in this case, the evidence shows clearly and palpably that the jury could reasonably draw but one conclusion.[3]

So viewed, the record shows that Stephens is a licensed real estate broker with Re/Max Affiliates, Roswell. Beginning in 1986, Stephens formed three partnerships — White Oak Creek Associates, Cedar Grove Associates, and Cedar Grove II Associates — for the purpose of

---

[1] *Yarbrough v. Kirkland*, 249 Ga. App. 523, 524 (2) (548 SE2d 670) (2001).

[2] Id. at 525 (2).

[3] (Punctuation and footnote omitted.) *Heretyk v. P. M. A. Cemeteries*, 272 Ga. App. 79 (1) (611 SE2d 744) (2005).

purchasing raw land in south Fulton County, an area Stephens touted as "the next big GROWTH area in metro Atlanta." Stephens was managing partner of and owned shares in all three partnerships. Sometime in early 1988, Jose Oviedo, M.D., a partner in two of the partnerships, White Oak Creek and Cedar Grove, approached Stephens about investing his retirement money in real estate. Stephens suggested Oviedo invest in a 210-acre plot in south Fulton County on Cochran Mill Road. On August 16, 1988, Oviedo executed a purchase agreement on the property in the amount of $699,543.43, approximately $3,325 per acre. The sale closed on or about November 8, 1988. Stephens represented the J. R. Oviedo, M.D., P.C. Profit Sharing Trust in the transaction and received a commission in conjunction with the sale.

On September 16, 1988, two months before Oviedo purchased the 210-acre tract (the "Oviedo tract"), Stephens sent a letter on ReMax letterhead to prospective investors, i.e., partners in White Creek, Cedar Grove, and Cedar Grove II titled "INVESTMENT OPPORTUNITY[:] 207 ACRES WITH APPROXIMATELY 4500 FEET FRONTAGE ON COCHRAN MILL ROAD IN SOUTH FULTON COUNTY." The letter provided as follows:

> As you are aware[,] the land in this area is rapidly being purchased and this parcel, being in the "HEART" of the Fairburn[,] Georgia region of WHITE OAK CREEK, CEDAR GROVE AND CEDAR GROVE II should be a very[,] very good APPRECIATOR. It could even be a potential "COMMERCIAL" property because of [its] location and road frontage. You[,] as a current Land Investor with us[,] are being given the FIRST RIGHT OF REFUSAL. We are purchasing the parcel for [$4,500] per acre with 20% down and the balance being carried by the seller on a 30 year amortization with a 5 year call. We WILL sell this land within 5 years. There will only be 19 shares with each share representing 10.89 acres[,] and the down payment for each share is $9,806. If you are interested in joining COCHRAN MILL ASSOCIATES please send your earnest money check of $1,000 per share payable to ReMax Affiliates in care of me by September 30, 1988. The balance of the down payment[,] $8,806 will be due at closing scheduled for November 1, 1988. On October 1, 1988[,] all remaining shares will be made available to others outside the current partnerships.

Subsequently, Stephens sent two more letters on ReMax letterhead touting a "NEW OFFERING" or "INVESTMENT OPPORTUNITY" in 105.19 acres (or one half of the Oviedo tract) on Cochran Mill Road

in south Fulton County at a price of $4,500 per acre, with "[t]he intent [of putting] the property on the market the day after closing for $9,000 per Acre." Stephens explained to investors that "[t]his is the piece [of property] I told you about last [September] but the seller's CPA told him not to sell until this year."

Sixteen investors formed Cochran Mill Associates on June 30, 1989, the same date the partnership purchased 105.054 acres from the Oviedo Trust for $4,500 per acre. Stephens was named managing partner, and though copies of the partnership agreement show him owning four shares of the partnership, he did not personally purchase a share in the partnership, claiming that it became oversubscribed.[4] In accordance with the partnership agreement, Cochran Mill partners each submitted to Stephens an initial capital contribution of $4,982.68 per share of partnership interest plus a monthly capital contribution of $220.31 per share, which Stephens used to pay taxes and other expenses. Stephens never told the partners that the property belonged to the Oviedo Trust or that the Trust had purchased the property for $3,325 per acre the preceding year. Four years later, Stephens advised the partners that the land had been appraised at $3,950 per acre, and several partners discussed the appraisal at a meeting. Subsequently, the partners began to question Stephens's management of the partnership's finances, including delinquent tax payments and failure to provide annual statements, and in 1999, the partners lost trust in Stephens, removed him as managing partner, and then filed suit.

1. *Land Deal: Breach of Fiduciary Duty and Fraud.* Cochran Mill contends that the trial court erred in granting summary judgment to Stephens on its claims related to the land purchase deal because his act of concealing the inflated purchase price tolled the applicable statutes of limitation under OCGA § 9-3-96. Specifically, the partners claim that they would not have invested in the partnership if they had known about the Oviedo Trust purchase and resale, a fact they did not discover until Stephens was removed as managing partner.

The statutes of limitation for fraud and breach of fiduciary duty are four and six years respectively.[5] However, the statutes of limitation may be tolled by a defendant's actions. OCGA § 9-3-96 provides that, "[i]f the defendant or those under whom he claims are guilty of

---

[4] Many of the partners believed Stephens was a partner.

[5] OCGA §§ 9-3-31; 9-3-24. See also *Willis v. City of Atlanta,* 265 Ga. App. 640, 643 (2) (595 SE2d 339) (2004); *Crosby v. Kendall,* 247 Ga. App. 843, 849 (2) (c) (545 SE2d 385) (2001) (six-year statute of limitation applies to claim of breach of fiduciary duty, arising out of a breach of escrow agreement). But see *Goldston v. Bank of America Corp.,* 259 Ga. App. 690 (577 SE2d 864) (2003) (ten-year statute of limitation, OCGA § 9-3-27, applies to action against trustee bank for breach of fiduciary duty).

a fraud by which the plaintiff has been debarred or deterred from bringing an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." In order to establish fraudulent concealment under this statute sufficient to toll the statute of limitation, a plaintiff must prove that: (1) the defendant committed actual fraud involving moral turpitude, (2) the fraud concealed the cause of action from the plaintiff, and (3) the plaintiff exercised reasonable diligence to discover his cause of action despite his failure to do so within the applicable statute of limitation.[6] However, when a confidential relationship exists, such as between partners,[7] the plaintiff's duty to investigate is decreased, and the defendant's duty to disclose is increased.[8] In such situations, "silence when one should speak, or failure to disclose what ought to be disclosed, is as much a fraud in law as is an actual false representation."[9] As our Supreme Court explained in *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*:[10]

> Where a confidential relationship exists, a plaintiff does not have to exercise the degree of care to discover fraud that would otherwise be required, and a defendant is under a heightened duty to reveal fraud where it is known to exist. Put another way, a confidential relationship imposes a greater duty on a defendant to reveal what should be revealed, and a lessened duty on the part of a plaintiff to discover what should be discoverable through the exercise of ordinary care. But the fraud itself — the defendant's intention to conceal or deceive — still must be established, as must the deterrence of a plaintiff from bringing suit.[11]

The question of the existence of such fraud is ordinarily for jury determination.[12]

Assuming, without deciding, that a confidential relationship existed — whether in the form of a partnership or agency relationship — appellant must establish intentional concealment and actual

---

[6] See *Heretyk*, supra at 80-81 (1).

[7] See OCGA § 23-2-58; see also *Crosby v. Rogers*, 197 Ga. 616, 622 (2) (30 SE2d 248) (1944); *Ledbetter v. Ledbetter*, 222 Ga. App. 858, 863 (4) (476 SE2d 626) (1996).

[8] See *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 849 (1) (507 SE2d 411) (1998) ("[A] confidential relationship imposes a greater duty on a defendant to reveal what should be revealed, and a lessened duty on the part of a plaintiff to discover what should be discoverable through the exercise of ordinary care.").

[9] (Punctuation and footnote omitted.) *Goldston*, supra at 694.

[10] Supra.

[11] Id. at 848 (1).

[12] See *Waycross Urology Clinic v. Johnson*, 279 Ga. App. 195, 198 (630 SE2d 807) (2006).

deterrence before the limitation statutes will be tolled. Appellant contends that the trial court erred in relying on *Allen v. Columbus Bank & Trust Co.*,[13] to support its conclusion that appellant did not show affirmatively that Stephens's conduct deterred or debarred appellant from bringing this action and that this case is analogous to *Goldston*.[14] We disagree.

In *Goldston*, we reversed the trial court's decision to dismiss a trust beneficiary's complaint as time-barred, finding that the statute of limitation was tolled by the fraud engaged in by the trustee/bank when it failed to disclose the very existence of the trust and failed to comply with any of its provisions.[15] In *Goldston*, we specifically distinguished *Allen*, noting that the beneficiary in that case was well aware of the trust's existence; had received benefits therefrom; and regularly received account statements which she admitted to never reading.[16]

In this case, there is no evidence that Stephens intentionally withheld information about the land purchase deal from the partners, or more significantly, that he concealed or failed to disclose information that deterred any partner from deciding if Cochran Mill had claims arising from the purchase. On the contrary, in the early 1990s, the partners believed that Cochran Mill paid too much for the property and even questioned the price paid at a meeting with Stephens. Moreover, four years after closing and seven years before this action was filed, Stephens himself advised the partners that the property was valued considerably less than they paid for it, a fact which should have raised a red flag.[17] Because appellant cannot show that Stephens's actions deterred them from bringing suit, their land deal claims are barred by the applicable statutes of limitation.

2. *Management Claims.* Cochran Mill next contends that the trial court erred in granting partial summary judgment to Stephens on its claims for fraud and mismanagement of partnership funds because Stephens's actions tolled the applicable statutes of limitation. Specifically, appellant claims that Stephens's efforts to appease the concerns of the partners who questioned him deterred appellant from discovering his fraud and breach of fiduciary duties. Appellant claims it could not discover Stephens's malfeasance until he was removed as managing partner. Applying the principles set forth in

---

[13] 244 Ga. App. 271 (534 SE2d 917) (2000).

[14] Supra.

[15] Id. at 695-696.

[16] Id. at 695.

[17] See, e.g., *Hunter, McLean*, supra at 850 (2) (plaintiffs did not file suit for fraud until five years later, despite fact that errors were discovered six months after closing).

Division 1, supra, we find no error in the trial court's ruling on these claims.

When, as here, actual fraud is the gravamen of an action, the statute of limitation "is tolled until such fraud is discovered, or could have been discovered by the exercise of ordinary care and diligence."[18] Though the level of diligence required by the plaintiff in investigating the fraud is lessened where a confidential relationship exists, it is not entirely extinguished.[19] Further, "[a]lthough issues concerning a plaintiff's diligence in discovering fraud usually must be resolved by the trier of fact, this is not always the case. A party may fail to exercise due diligence as a matter of law."[20]

The Cochran Mill partners were sophisticated business people who were clearly put on notice of Stephens's alleged mismanagement of the partnership's affairs, beginning as early as 1990. Partner Fred Miller testified that he questioned the late payment of taxes from the beginning. Partner David Sliney met with Stephens in the early 1990s and wrote to him on March 3, 1993, expressing concern with his failure to provide requested information and his handling of the partnership's financial affairs. In that letter, Sliney wrote, "I continue to have several concerns about what is going on in the partnerships . . . [and] I also continue to be confused as to the subject of late payment by partners and the funding you make personally. Your checks written back to you indicate that there are times the partnership owes you over $2,000.00." Partner James O'Hara testified that he called Stephens from the beginning to complain about his failure to report on the financial status of the loan. And, partner Daniel Ruth testified that he complained as early as 1994 about Stephens's reporting habits. Given that the complaint was filed more than seven years after the partners were first put on notice of Stephens's alleged mismanagement of Cochran Mill's financial affairs, the trial court did not err in granting partial summary judgment on the management claims.

3. *RICO Claim.* Cochran Mill contends that the trial court erred in granting summary judgment on its RICO claim because that claim relates back to the original action. The trial court, however, never ruled that the claim did not relate back under OCGA § 9-11-15 (c). Rather, the trial court found that the claim was barred by the statute of limitation: "So, even if this [c]ourt were to find that [appellant's] RICO claims relate back to the filing of the original complaint on

---

[18] (Punctuation and footnote omitted.) Id. at 847 (1).

[19] See id. at 848 (1); Adams, Georgia Law of Torts, § 18-6, p. 403 (2007).

[20] (Citation and punctuation omitted.) *Nash v. Ohio Nat. Life Ins. Co.*, 266 Ga. App. 416, 418 (1) (597 SE2d 512) (2004).

March 7, 2000, they are still time-barred [because there is evidence that the claims accrued in 1993]." Though we agree that Cochran Mill's RICO claim relates back, the trial court correctly concluded that it was time-barred.

Pursuant to OCGA § 9-11-15 (c), "[w]henever the claim or defense asserted in the amended pleading arises out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading."

> The question of relation back of the amendment turns on fair notice of the *same general fact situation* from which the claim arises. It is apparent that the strict rule of no relation back of the amendment to the time of filing the original complaint because of the assertion of a new cause of action is no longer applicable unless the causes of the action are not only different but *arise out of wholly different facts.*[21]

Cochran Mill's RICO claim, predicated on acts of conversion of partnership funds and theft by deception, arises from the same conduct as its original action was based. Nonetheless, the claim is time-barred.

OCGA § 16-14-8 provides: "Notwithstanding any other provision of law, a criminal or civil action or proceeding under this chapter may be commenced up until five years after the conduct in violation of a provision of this chapter terminates or the cause of action accrues." In *Blalock v. Anneewakee, Inc.*,[22] we construed OCGA § 16-14-8, holding that the five-year statute of limitation commenced "when the civil RICO cause of action accrues, which we interpret[ed] to mean when the plaintiff discovers, or reasonably should have discovered, that he has been injured and that his injury is part of a pattern."[23] In *Southern Intermodal Logistics v. D. J. Powers Co.*,[24] we determined that "the injury which [starts] the running of the five-year limitation period [is] the economic loss sustained by [the plaintiff] as a result of [the defendant's] alleged wrongful conduct."[25] Accordingly, in this case, the injury which started the running of the five-year limitation period was the economic loss sustained by Cochran Mill as a result of Stephens's alleged conversion and theft by deception of partnership

---

[21] (Citation and punctuation omitted; emphasis in original.) *Smith v. Wilfong*, 218 Ga. App. 503, 505-506 (1) (462 SE2d 163) (1995).

[22] 206 Ga. App. 676 (426 SE2d 165) (1992).

[23] Id. at 678.

[24] 251 Ga. App. 865 (555 SE2d 478) (2001).

[25] Id. at 869 (1).

funds. The trial court found that the partners knew, or should have known, of their injury and that it resulted from a pattern of racketeering activity by 1993, at the latest, when several partners began to question Stephens about partnership checks that he had written to himself, and the evidence discussed in Division 2, supra, supports this finding. Accordingly, the trial court correctly found that the statute of limitation on appellant's RICO claim expired in 1998, two years before appellant filed its original action.

Alternatively, and without citing any relevant authority in support, Cochran Mill argues in its reply brief that the trial court erred in barring its RICO claims that arose after 1993, and, certainly within the five-year statute of limitation. Presumably, appellant's claim is based on the "separate accrual rule," i.e., that a new RICO cause of action accrued each time appellant suffered injury from Stephens's theft or conversion of partnership funds. The rule provides that " 'when a new and independent injury is incurred from the same violation, the plaintiff is again "injured in his business or property" and his right to sue for damages from that injury accrues at the time he discovered or should have discovered that injury.' "[26] We examined the "separate accrual rule" in *Southern Intermodal*,[27] and noted that "we are inclined to adopt [it]."[28] Without repeating what was said in that case and our analysis of the rule, we find that the reasoning in *Pilkington v. United Airlines*[29] applies here, as opposed to that espoused in *Southern Intermodal* because "the injury is not *new and independent*. The injury allegedly suffered by the [appellant] after [1993 or since 1995] was not unfamiliar, strange, or different. It was the same injury that has been accumulating since [1993]."[30] Thus, appellant's RICO claims are barred by the statute of limitation.

4. Lastly, Cochran Mill argues that the trial court erred in restricting the presentation of evidence relating to transactions occurring prior to the expiration of the applicable statutes of limitation. We find this claim to be an inaccurate characterization of the trial court's order. Rather, the trial court granted partial summary judgment as to certain actions occurring before the expiration of the applicable statutes of limitation. Because the trial court never expressly ruled on the admissibility of such evidence, we find no merit in this enumeration.

*Judgment affirmed. Johnson, P. J., and Phipps, J., concur.*

---

[26] Id. at 871 (2), citing *Bankers Trust Co. v. Rhoades*, 859 F2d 1096, 1103 (II) (B) (1) (2nd Cir. 1988).

[27] Supra.

[28] Id. at 872 (2).

[29] 112 F3d 1532 (11th Cir. 1997).

[30] (Emphasis in original.) Id. at 1538 (III) (A) (2).

DECIDED JULY 3, 2007.

*Cohen, Pollock, Merlin & Small, Gus H. Small, Jr., Kevin T. O'Sullivan, Kelly S. Scarbrough,* for appellant.

*Lamar, Archer & Cofrin, David W. Davenport, Keith A. Pittman,* for appellee.