**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**November 16, 2012**

# In the Court of Appeals of Georgia

A12A1550. GEORGIA CASUALTY & SURETY COMANY v. DO-071
SALTER'S INDUSTRIAL SERVICE, INC. et al.

DOYLE, Presiding Judge.

Georgia Casualty and Surety Company and Plantation Sweets, Inc., (collectively "Plantation") appeal from the trial court's grant of summary judgment to Salter's Industrial Service, Inc., and Excell Refrigeration of South Carolina, Inc., in Plantation's action for negligence, failure to warn, and negligent misrepresentation claims against the defendants. For the reasons that follow, we affirm the trial court's grant of summary judgment.

To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. [OCGA] § 9-11-56 (c). A defendant may do this by showing the court that the

documents, affidavits, depositions and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of [a] plaintiff's case. If there is no evidence sufficient to create a genuine issue as to any essential element of [a] plaintiff's claim, that claim tumbles like a house of cards. All of the other disputes of fact are rendered immaterial. A defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case; instead, the burden on the party moving for summary judgment may be discharged by pointing out by reference to the affidavits, depositions and other documents in the record that there is an absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.[1]

Viewed in this light, the evidence establishes that Ronnie Collins ran a farming operation, which included multiple temperature- and humidity-controlled warehouse rooms used to refrigerate Vidalia onions after harvest. In 2001, Collins wanted to retrofit the system in order to cure sweet potatoes during parts of the year when onions were not in season. In order to cure the potatoes, the warehouses had to be equipped to heat the potatoes to approximately 90 degrees for approximately 6 days.

---

[1] (Citation omitted.) *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991).

2

It is undisputed that the original company that designed and installed the custom refrigeration system is not a party to this litigation. Moreover, the system was not designed to have high temperature safety devices inside the heating element of the condenser[2] (aside from the breakers), which were inside the circuit between the control system and the re-heater. Neither Salter's nor Excell serviced the computer system.

Collins called Lonnie Salter, a licensed electrician with Salter's and asked him to install a device that would allow Collins to run the condenser's heating element independent of the cooling element in order to heat the warehouses to cure sweet potatoes during that harvest. Collins did not inquire with the manufacturer of the system whether the computer controls could be reprogrammed to accommodate higher temperatures associated with sweet potato curing. In order to achieve Collins's goal, Salter installed a manual switch (similar to a light switch) inside of an enclosed electrical box outside the actual warehouse rooms that would allow Collins to run the condenser's re-heater without using the computer-controlled cooling apparatus (because the computer would not allow Collins to heat the room at a temperature high enough to cure the sweet potatoes); Collins deposed that he was unaware of a method

_____

[2] The condenser was normally used to control the humidity of the room.

by which he could achieve this result using the computer controls that generally ran the system.

It is undisputed that Salter told Collins he needed to run the system's fans with the re-heaters in order to prevent overheating and component failure when he used the manual switch. Collins deposed that neither Salter's nor Excell warned him of a fire risk due to the manual switches. Salter deposed that he suggested using stand-alone heaters to achieve the same results as the manual switch, but Collins declined to use such a method due to the cost. Salter also deposed that he did not believe the manual switch constituted a fire hazard because the design of the system would cause the wires energizing the re-heaters to melt at a temperature lower than the ignition point of the room and, when the wires melted, cause the fuses to the re-heaters to blow and shut down the system. Salter also deposed that he did not bypass any safety device while installing the manual switches, which simply allowed for a manual closure of the wire contacts, allowing electricity to go to the re-heaters without the normal method (the computer control to close the contacts). Collins operated the rooms in this manner for a number of years without incident.

In March 2004, Excel was called out to Plantation's facility in order to do a multi-day inspection of the refrigeration units in the warehouses in preparation for

onion season. Floyd Sparks, a refrigeration technician with Excell, serviced the warehouses in preparation for onion season. It is undisputed that Sparks saw frayed or charred wiring in the system of the particular warehouse at issue, reporting the issue to Collins, and that Salter's was called to replace the wiring as a result of Sparks's inspection. Such wiring damage previously had occurred in the system prior to Salter's installation of the manual switch and at other onion storage facilities that did not have the manual switches. Midway through Sparks's multi-day inspection, a fire occurred in the warehouse in question. There is no evidence in the record that Sparks operated the manual switches at any time during his inspection. It is undisputed that on the day of the fire, the manual switch was in the off position and the contacts in the power supply were in the open position — they should not have been conducting electricity absent a defect. Experts testified that the origin of the fire was the re-heaters and that the manual switch may have allowed electricity to divert to the re-heaters even though the switch was set to the off position assuming that someone did not intentionally turn on the manual switch.

    A cause of action for negligence requires (1) a legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the

resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty.[3]

If a defendant owes no legal duty to the plaintiff, there is no cause of action in negligence, and the determination of the duty a defendant owed a plaintiff is a question of law.[4] In addition to the general standard of reasonable care to avoid harm, a duty may be defined by statute — "negligence per se."[5] "Breach of duty alone does not make a defendant liable in negligence. The rule remains that the true ground of liability is the superior knowledge of the [defendant] of the existence of a condition that may subject the [plaintiff] to an unreasonable risk of harm."[6] Moreover, "[i]t is well established that the occurrence of an unfortunate event is not sufficient to

---

[3] (Punctuation omitted.) *Dupree v. Keller Industries*, 199 Ga. App. 138, 141 (1) (404 SE2d 291) (1991).

[4] See id.

[5] See *R & R Insulation Svcs. v. Royal Indemnity Co.*, 307 Ga. App. 419, 424-425 (1) (705 SE2d 223) (2010).

[6] (Punctuation, citations, and emphasis omitted.) *Brazier v. Phoenix Group Mgmt.*, 280 Ga. App. 67, 70-71 (1) (a) (633 SE2d 354) (2006).

authorize an inference of negligence,"[7] and "[a]llegations, conclusory facts, and conclusions of law cannot be utilized to support or defeat motions for summary judgment."[8]

1. As an initial matter, Plantation does not argue in its brief on appeal that Salter's or Excell's actions constituted violations of any specific code provisions, and therefore, they have abandoned their claims that the trial court erred by finding that Plantation failed to establish a duty via negligence per se.

2. Plantation contends that the trial court erred by granting summary judgment to the defendants because their actions constituted a breach of the general duty of reasonable care that professionals owe to their customers. We disagree.

(a) *Excell*

As the trial court correctly determined, there simply is no legal duty owed to Plantation by Excell, refrigeration specialists, to refuse to work on the system, provide warnings regarding the retrofitted manual switch, or anything else regarding the matter. Moreover, there is a complete lack of evidence that Excell provided

---

[7] (Punctuation omitted.) *Johnson v. MARTA*, 230 Ga. App. 105, 106 (495 SE2d 583) (1998).

[8] (Punctuation omitted.) Id. at 107 (1).

anything other than reasonable service to Plantation during the course of the yearly inspection of the refrigeration system.[9] It is undisputed that Sparks, Excell's technician, reported to Plantation any damaged equipment, and there is no evidence that Sparks should have known that the switch itself was defective. Although, it appears that the trial court erred by finding that Sparks told Plantation to remove the manual switch prior to the fire, and there actually is a dispute of fact as to whether Sparks discussed this before or after the fire with Plantation officials, it does not affect the outcome of this appeal because the trial court correctly determined that Plantation has failed to present any evidence that Excell violated a general duty of reasonable care to Plantation by servicing the unit with the manual switch installed.

(b) *Salter's*

Based on the expert testimony provided in the record, the fire started at the evaporator (which contained the re-heater) in the warehouse room in which Salter's had installed one of the manual switches. Moreover, the expert testimony indicates that the re-heater could not have operated without being energized by either (1) the computer controller activating the circuit, (2) a person turning the manual switch

---

[9] See, e.g., *Dixie Group, Inc. v. Shaw Indust. Group*, 303 Ga. App. 459, 467-468 (4) (693 SE2d 888) (2010) (collecting cases).

"on," or (3) a defect in the manual switch or computer system that would cause the circuit to conduct electricity without a user intentionally utilizing the switch or the computer. Finally, there is testimony that more likely than not, the manual switch caused the circuit to energize, rather than the computer control. This evidence, however, is insufficient to establish that Salter's act of installing the manual switch was a breach of any code section or a standard of reasonable care. Despite the conclusory statements in the expert affidavit provided by Plantation, it is undisputed that Salter's did not "by-pass" any "inherent safety device" in the system by installing the switch, rather, Salter's bypassed the computer controller so that Collins could utilize the system to heat rather than refrigerate. The computer controller was not a safety device, it was simply a controller for the temperature and humidity of the room, the presets of which would not allow for a temperature setting above 46 degrees because the room was designed to house onions and not sweet potatoes.

Plantation has failed to establish with specific evidence how installation of the switch, which acted as it was supposed to do (assuming that the switch was not

9

defective)[10], constituted unreasonable action on the part of Salter's.[11] Similar to this Court's determination in *Dupree*,[12] there is a complete lack of record evidence beyond the conclusory statements of Plantation's expert that Collins did not understand that altering the re-heaters by adding the manual switch to the temperature control devices in the warehouse (as Collins himself requested of Salter's) might result in some harm to the system (especially if the re-heater was used without the fan as Salter's had instructed) or that Lonnie Salter had greater knowledge of this risk. The component failure at issue was a custom-designed refrigeration system, which Collins wanted to convert into a heating apparatus, and Salter was under no duty to suggest a more appropriate method to convert the system, even though the record establishes that he

---

[10] We note that there also is a failure of evidence that Salter's knew or should have known that the switch was defective.

[11] See *Hudgins v. Bacon*, 171 Ga. App. 856, 861 (3) (321 SE2d 359) (1984) ("The law imposes upon building contractors and others performing skilled services the obligation to exercise a reasonable degree of care, skill, and ability, which is generally taken and considered to be such a degree of care and skill as, under similar conditions and like surrounding circumstances, is ordinarily employed by others of the same profession.") (punctuation omitted).

[12] Cf. *Dupree*, 199 Ga. App. at 143 (2) (holding that "[e]ven if the industry and federal regulations evidenced an inherent danger and [the defendant] knew or should have realized that [device] was or was likely to be dangerous for the use for which it was supplied, there was a complete absence of evidence that [the defendant] had reason to believe that [the plaintiff] or its employees would not realize the" danger).

10

did suggest alternatives that were less likely to damage the refrigeration system.[13] Although Collins may not have had the specialized knowledge of wiring that Salter's possessed, like any other lay person, he understood that heat can eventually cause a fire and that he was converting his refrigeration system to heat the warehouse room for a number of days.[14]

Under these circumstances, the trial court correctly granted summary judgment to Salter's and Excell on Plantation's negligence claims.

3. Plantation argues that the trial court erred by granting summary judgment to Salter's on its claim that Salter's negligently misrepresented to Plantation that the manual switch could be used to safely heat the warehouse room. We disagree.

The undisputed testimony established that Salter's explained to Plantation that the fans had to run any time the manual switch was used to energize the re-heater to cure the sweet potatoes, and Collins has not alleged that Salter's made any representation as to the efficacy of the switch. There has been no testimony that the

---

[13] See *R & R Insulation Svcs.*, 307 Ga. App. at 431 (3) (c).

[14] See, e.g., *White v. Ga. Power Co.*, 265 Ga. App. 664, 666 (1) (595 SE2d 353) (2004) ("The danger from fire or water is one that even young children may be said to apprehend.") (punctuation omitted).

fans were running at the time the fire occurred, and therefore, Plantation has failed to establish that any misrepresentation occurred.

4. Finally, Plantation argues that the trial court erred by granting summary judgment on its claims that Excell and Salter's failed to warn Plantation that the manual switch should have been removed.

A breach of a duty to warn, however, must also be the cause of the injury about which the plaintiff complains, and the plaintiff must present evidence supporting a reasonable inference that the warning provided by the defendant would prevent the injury.[15]

> An inference cannot be based upon evidence which is too uncertain or speculative or which raises merely a conjecture or possibility. The plaintiff must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result. A mere possibility of such causation is not enough. . . .[16]

Again, although Plantation's expert testified that a warning to remove the manual switch from Excell or Salter's could have prevented the fire (assuming that

---

[15] See *Niles v. Board of Regents of the Univ. Sys. of Ga.*, 222 Ga. App. 59, 61 (2) (473 SE2d 173) (1996).

[16] (Punctuation and citation omitted.) Id.

12

Plantation had heeded such warning and removed the bypass switches), Plantation has not provided any citation to law or statute that the defendants had a duty to provide any specific warnings apart from those already provided to Collins that he should run the fans at the same time he ran the re-heater during potato season.[17]

*Judgment affirmed. Andrews and Boggs, JJ., concur.*

---

[17] See *R & R Insulation Svcs.*, 307 Ga. App. at 427 (3).