**FIRST DIVISION**
**PHIPPS, C. J.,**
**ELLINGTON, P. J., and MCMILLIAN, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules/**

**November 21, 2014**

# In the Court of Appeals of Georgia

A14A1020. GODWIN v. MIZPAH FARMS, LLLP et al.

MCMILLIAN, Judge.

Walter P. Godwin appeals the trial court's grant of summary judgment on his claims, inter alia, for fraud, breach of fiduciary duty, and breach of contract against Mizpah Farms, LLLP ("Mizpah Farms"); his son, Bobby I. Godwin; and his grandchildren, John Godwin, Summer Godwin Hall, and Casey Godwin[1] on the ground that the claims are barred by the applicable statutes of limitation. We affirm

---

[1] Because the individual parties in this case are all members of the same family, most sharing the same last name, for ease of reference, we will refer to them individually by their first names. Additionally, appellees John Godwin, Summer Godwin Hall, and Casey Godwin will be referred to collectively as the "Grandchildren," and all the appellees will be referred to collectively as the "Appellees."

the trial court's order of summary judgment in part and reverse in part, as set forth below.

This Court reviews the grant of summary judgment de novo, viewing the evidence in the light most favorable to the nonmovant. See *Whitfield v. Tequila Mexican Restaurant, No. 1, Inc.*, 323 Ga. App. 801, 802 (2) (748 SE2d 281) (2013). So viewed, the evidence shows that Walter began farming his family's land around 1949 and eventually accumulated over 600 acres of land in Grady and Decatur Counties. And as early as 1967, Walter's son, Bobby, began farming alongside his father, growing primarily corn and peanuts. They farmed in partnership until 1992, when Walter retired "on paper." Despite this "retirement," Walter continued to help Bobby with the farm until 2009.

After the death in April 2000 of Maggie Godwin, Walter's first wife and Bobby's mother, Walter and Bobby consulted legal counsel in connection with planning Walter's estate. On counsel's advice, Walter, Bobby, and the Grandchildren formed Mizpah Farms, LLLP, as Walter explained, "[t]o help on estate taxes." Walter signed the Mizpah Farms limited partnership agreement (the "LLLP Agreement") as both the sole general partner and a limited partner, and the others signed as limited partners.

According to both Bobby and Dale Davidson, Walter's tax attorney, Mizpah Farms was formed to hold real estate and the only income to the partnership was rental income from the land. Although Walter said in his deposition that he thought the farming operations also were to be run through the partnership, he concedes on appeal that the farming operations and Mizpah Farms "are distinct and separate entities, each with [its] own federal tax ID."

To fund Mizpah Farms, Walter signed a deed dated November 21, 2000, conveying his interest in ten parcels of land to the partnership. Additionally, Walter signed an assignment dated November 21, 2000, transferring all of his "Limited Partnership Units and Partnership Rights in [Mizpah Farms]" to Bobby and the Grandchildren, effective December 31, 2000, "in consideration of the love and affection among [Walter, Bobby and the Grandchildren] . . . as a gift" (the "Assignment"). The Mizpah Farms partnership documents reflect that as of November 20, 2000, Walter held 811,395 partnership units, while Bobby and the Grandchildren each held 10,000 partnership units.[2] After the Assignment, however, as of December 31, 2000, Walter's partnership certificate was stamped "cancelled"

---

[2] The partnership units were valued at approximately $1 per unit with the valuations taken from the estimated values assessed on the land by the Grady County Tax Assessors Office.

3

and his partnership units were divided among the Grandchildren with each receiving 270,465 units. Bobby retained his original 10,000 partnership units.

Walter now asserts that he did not understand the partnership documents and that he was tricked into signing them.[3] However, the attorneys who prepared the documents and witnessed Walter's signatures stated that they explained the legal import of the documents to Walter and believed that Walter understood them before he signed them. As one of the attorneys explained, the limited partnership arose out of a "discussion over a period of time. This didn't just happen in one day or one moment."

The record demonstrates that Walter began to have questions about Mizpah Farms in 2003, when he became concerned that he was not receiving any farming income from working alongside Bobby on the farm. In his verified complaint, Walter said that he asked Bobby why he was not receiving any farming income, and Bobby told him that the farm was not making money after the payment of all the bills and expenses of farming. At his deposition, Walter testified that he did "nothing" in response to his concerns about the farming income because he "had too much trust

---

[3] His attorney stated at the hearing on the motion for summary judgment, however, that he did not believe that Walter was "tricked" into signing any deed; rather, his counsel believed the deeds were signed under "undue influence."

4

in [his] son, . . . that he'd make it right." However, Walter acknowledged that he had access to documentation at the Farm Service Agency (the "FSA") of the United States Department of Agriculture (the "USDA"), where he continued to sign documentation relating to the farming business. He also had access to records at the Bank, where he was a signatory on the farm account. Yet, Walter took no steps to investigate these financial records at the time, and he conceded that he "didn't chase it down like [he] should have."

Around the same time period, however, Walter asked Davidson a series of questions about Mizpah Farms and other farming-related matters. He also asked whether it was a conflict of interest for Davidson "to represent *BOTH* general partners in a *business contract*, or any other partners?" In response, Davidson wrote Walter a letter dated January 23, 2004, explaining, inter alia, that the only property in Mizpah Farms was the real estate; that according to the LLLP Agreement, Walter was the sole general partner of Mizpah Farm; that Bobby and the Grandchildren were the limited partners; that the partnership could not act except through Walter as the general partner; and that Davidson did not believe a conflict existed because he was under "the distinct impression that the partners, both General and Limited, are 'on good

5

terms'" but if he were mistaken in that impression Walter needed to let Davidson know "immediately."[4]

Additionally, in January 2004, Walter, Bobby, and the Grandchildren entered into an agreement giving Walter the right to collect all proceeds from the sale of timber on the land owned by Mizpah Farms (the "Timber Agreement"). The Timber Agreement identifies Walter as the general partner of Mizpah Farms, but not as a limited partner, and identifies Bobby and the Grandchildren as limited partners.

In July 2010, Walter again began to have concerns about Mizpah Farms, and he once again went to Davidson for information and partnership documents. Subsequently, on December 17, 2010, Walter filed an "Application for Decree of Dissolution" of Mizpah Farms ("First Application"). And on March 30, 2012, Walter filed a "Verified Second Amended Application & Complaint" ("Second Amended Application"), asserting claims against the individual Appellees in addition to the request for dissolution of Mizpah Farms. Walter testified that his primary goal in this litigation is to get his land back.

---

[4] Davidson is not a party to this lawsuit, and Walter has pointed us to no evidence indicating that Davidson was acting on behalf of Bobby or the Grandchildren in writing this letter.

6

The Appellees subsequently filed a motion for summary judgment, asserting that Walter's claims were barred by the applicable statutes of limitation and that Walter lacked standing to seek dissolution of the partnership as he had divested all of his partnership interests in 2000. Following a hearing, the trial court granted the motion for summary judgment as to all of Walter's claims. The trial court found that "any claim of right would have to have been brought within the applicable statute of limitation from December 31, 2003, when Walter Godwin began to question his lack of income and inclusion in partnership activities," and "that all partnership shares are vested in the names" of the Appellees and thus Walter had no standing to seek dissolution of the partnership.

1. Walter first asserts that the trial court's July 22, 2013 summary judgment order was premature, because five months earlier, in an order dated February 11, 2013, the trial court had allegedly reserved ruling on certain discovery. However, Walter designated only portions of the trial court record for inclusion in the record on appeal, and the February 11, 2013 order was not among the designated documents.[5] As a result, he is unable to show the existence of any outstanding discovery issues. "In order for an appellate court to make a determination about the

---

[5] Walter consequently has not provided us a record citation to that order.

correctness of a judgment at issue, it is the appellant's duty to include in the record on appeal the items necessary for the appellate court to objectively review the evidence and proceedings giving rise to the judgment." *Kirkendall v. Decker*, 271 Ga. 189, 191 (516 SE2d 73) (1999). Accordingly, "[i]n the absence of the relevant information, and there being a presumption in favor of the regularity of court proceedings," we must presume that the summary judgment issues were ripe for the trial court's consideration. See id.

Moreover, the record contains no indication that Walter asked the trial court for a continuance of the summary judgment hearing or a delay in its ruling until the alleged discovery issue could be resolved. Thus, Walter did not present this issue to the trial court for its consideration. It is axiomatic that "our appellate courts are courts for the correction of errors of law committed in the trial court. . . . Therefore, absent special circumstances, an appellate court need not consider arguments raised for the first time on appeal." (Citation and punctuation omitted.) *Safe Shield Workwear, LLC v. Shubee, Inc.*, 296 Ga. App. 498, 500-501 (2) (675 SE2d 249) (2009). See also *915 Indian Trail, LLC v. State Bank & Trust Co.*, 328 Ga. App. 524, 534-535 (3) (759 SE2d 654) (2014) (physical precedent only) (rejecting argument that trial court prematurely ruled on summary judgment motion in light of pending motion to compel

8

discovery, where party seeking discovery failed to meet the requirements of OCGA § 9-11-56 (f)).

2. Walter also argues that the trial court erred in making certain findings of fact in its summary judgment order because the record contains conflicting evidence on those issues. We agree that the trial court erred to the extent that it acted as a finder of fact to resolve conflicting issues in response to the Appellees' motion for summary judgment, instead of construing the evidence in favor of Walter as the nonmovant. See *Whitfield*, 323 Ga. App. at 802 (2). Nevertheless, a trial court's order of summary judgment, including any findings of fact, "enjoy[s] no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met." *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010). Accordingly, this Court will consider the evidence of record de novo in accordance with the well-established summary judgment standard.

3. Walter next asserts that the trial court erred by finding as a matter of law that the statutes of limitation for Walter's causes of action accrued on December 31, 2003, and in failing to consider his argument that the limitation periods would be tolled under OCGA § 9-3-96 due to the confidential and/or fiduciary relationship between Walter and Bobby.

"In determining whether the statute of limitation provides a bar to this action the court must decide when the statutory period began to run." (Citation omitted.) *Contract Furniture Refinishing & Maintenance Corp. of Ga. v. Remanufacturing & Design Grp., LLC*, 317 Ga. App. 47, 50 (1) (730 SE2d 708) (2012). And

> [i]t has been long recognized and is well established that a statute of limitation begins to run on the date a cause of action on a claim accrues. In other words, the period within which a suit may be brought is measured from the date upon which the plaintiff could have successfully maintained the action.

(Citation omitted.) Id. at 50-51(1). See also *Hoffman v. Ins. Co. of N. A.*, 241 Ga. 328, 329 (245 SE2d 287) (1978) ("When the question is raised as to whether an action is barred by a statute of limitations, the true test to determine when the cause of action accrued is to ascertain the time when the plaintiff could first have maintained his action to a successful result.") (citation and punctuation omitted). Because Walter's claims arise from various alleged actions on the part of the Appellees and allege varying damages, the limitation periods for all the claims in this case do not necessarily begin to run from the same date. Accordingly, we will address the claims according to the underlying actions alleged and the damage allegedly suffered.

We must also determine whether we should calculate the applicable limitation periods using the date of Walter's First Application, filed on December 17, 2010, or the Second Amended Application, filed on March 30, 2012, which requires a determination of whether the claims in the second pleading relate back to the first. Georgia courts have held that

> the question of relation back of the amendment turns on fair notice of the same general fact situation from which the claim arises. It is apparent that the strict rule of no relation back of the amendment to the time of filing the original complaint because of the assertion of a new cause of action is no longer applicable unless the causes of the action are not only different but arise out of wholly different facts.

(Citation, punctuation and emphasis omitted.) *Jensen v. Engler*, 317 Ga. App. 879, 883 (1) (b) (733 SE2d 52) (2012). Again, because the determination of this issue depends upon the allegations of a particular claim, the pleading used will not necessarily be the same for each claim. However, we need not determine whether a claim relates back to the First Application if we find that the statute of limitation ran before it was filed on December 17, 2010.

(a) *Claims to recover land* – The gist of Walter's claims of fraud (Count I), undue influence (Count II), lack of consideration (Count III), and mistake (Count IV)

is that Bobby and the Grandchildren initiated a fraudulent plan to deprive him of his land through the formation of Mizpah Farms. In support of these claims, Walter alleged that Bobby initially induced him to engage in estate planning with small distributions of his land. Walter believed that Mizpah Farms was created "to give the farm a name," but he understood that he retained a 96% ownership in the partnership. And in the prayer for relief as to these claims, Walter seeks to rescind, cancel, set-aside, and void "any and all of the documents, papers, deeds, certificates of organization, partnership certificates, partnership agreement and all amendments thereto which relate to Mizpah Farms, LLLP, including but not limited to the deeds described or referenced therein, and all assets of Walter P. Godwin be restored to him."

The transfer of Walter's interest in the land to Mizpah Farms occurred on November 21, 2000, and the transfer of Walter's partnership units to Bobby and the Grandchildren was effective as of December 31, 2000. Walter claims that he did not understand the documents he was signing and that he relied on his son Bobby in signing them. "[O]ne signing a document has a duty to read it and is bound by the terms of a document he does not read," although a party to a confidential or fiduciary relationship may rely upon representations made by the other party. *Trulove v.*

*Woodmen of World Life Ins. Society*, 204 Ga. App. 362, 365 (419 SE2d 324) (1992). Walter asserts that as his son and business partner, Bobby had a confidential relationship with him. Even so, Walter did not identify any misrepresentations by Bobby regarding the content of the documents or the purpose of Mizpah Farms. Although Walter states that he understood that he would maintain a 96% ownership interest in Mizpah Farms and remain as general partner, he could not recall who may have made any such representation to him.

Moreover, Walter never stated that he did not read the documents or that Bobby somehow prevented him from reading the documents before he signed them. In fact, Walter testified that he has never had any problems with his cognitive abilities, that he had the ability to handle his financial affairs in 2000, and that he always made his own decisions and did his own thinking. Additionally, Walter has not directly disputed the testimony of his lawyers asserting that they explained the import of the documents to him. Walter's conclusory statements that he was "tricked" into signing the documents or had a "gut feeling" that he was "swindled" do not overcome the lack of any evidence showing fraud on the part of Bobby (or anyone else) that prevented him from reading or understanding the documents he signed in

13

conjunction with Mizpah Farms. See *Georgia Cas. & Sur. Co. v. Salter's Indus. Svc., Inc.*, 318 Ga. App. 620, 623 (734 SE2d 415) (2012).

Thus, we conclude that Walter discovered or reasonably could have discovered the transfer of his interest in the land to Mizpah Farms and his assignment of his partnership interests to his Grandchildren, by December 31, 2000, at the latest. Accordingly, even if we apply the seven-year statute of limitation for actions seeking cancellation of a deed,[6] the longest limitation period applicable, we find that Walter's claims under Counts I, II, III and IV expired on December 31, 2007, almost three years before he filed the First Application. Summary judgment was proper as to such claims.[7]

(b) *Claims for partnership proceeds and Walter's removal as general partner*– Walter's claims for breach of fiduciary and confidential relationships (Count VI),

---

[6] See *Evans v. Dunkley*, 316 Ga. App. 204, 207 (1) (728 SE2d 832) (2012) (seven-year statute applies to equitable action to action for accounting and cancellation of deed); *Lockridge v. Smith*, 298 Ga. App. 428, 431 (2) (a) (680 SE2d 501) (2009) (same). We note that the Appellees argue that the four-year statute of limitation for injuries to personalty under OCGA § 9-3-31 applies.

[7] We will affirm a grant of summary judgment if it is "right for any reason, whether stated or unstated in the trial court's order, so long as the movant raised the issue in the trial court and the nonmovant had a fair opportunity to respond." *Anderson v. Jones*, 323 Ga. App. 311, 312, n. 2 (745 SE2d 787) (2013).

14

aiding and abetting breach of fiduciary duty (Count VII), breach of contract (Count X), and breach of fiduciary duty for freezing Walter out of the partnership (Count XI) arise from allegations that Bobby and the Grandchildren breached their duties to Walter as fellow partners, breached the LLLP Agreement by failing to adhere to their assigned roles or the purposes of the agreement, and took partnership income for their own gain.

"Under OCGA § 9-3-24, an action for breach of a written contract must be brought within six years of the breach." *Hamburger v. PFM Capital Mgmt., Inc.*, 286 Ga. App. 382, 384 (1) (649 SE2d 779) (2007). "The discovery rule is not applicable to a cause of action based on breach of contract; with respect to a breach of contract claim, the statute of limitation runs from the time the contract is broken rather than from the time the actual damage results or is ascertained." (Citation and punctuation omitted.) Id. at 385 (1).

In contrast, Georgia has no specific statute of limitaton for breach of fiduciary duty claims. Instead, we examine the injury alleged and the conduct giving rise to the claim to determine the appropriate statute of limitation. See *Reaugh v. Inner Harbour Hosp., Ltd.*, 214 Ga. App. 259, 260 (1) (447 SE2d 617) (1994). In this case, Walter alleges that Bobby, aided and abetted by the Grandchildren, diverted income owed

15

from the partnership and overstepped their duties as limited partners, all in violation of the LLLP Agreement. Accordingly, we find that the six-year statute of limitation for breach of simple contracts under OCGA § 9-3-24 applies to these breach of fiduciary duty claims. See *Cochran Mill Assocs. v. Stephens*, 286 Ga. App. 241, 244 (1) (648 SE2d 764) (2007) (applying six-year contract limitation period to claims of fiduciary duty arising out of a real estate partnership); *Crosby v. Kendall*, 247 Ga. App. 843, 849 (2) (c) (545 SE2d 385) (2001) (applying a six-year limitation period to a claim of breach of fiduciary duty arising in connection with an escrow agreement).[8] See also Charles R. Adams III, Ga. Law of Torts § 18:2 (h) (2013–2014 ed.). In applying the limitation period, we must also remain mindful that "[t]he statute of limitation for a cause of action for breach of fiduciary duty is triggered by a wrongful act accompanied by any appreciable damage." *Hendry v. Wells*, 286 Ga. App. 774, 779 (1) (650 SE2d 338) (2007). Moreover, each act of alleged breach of

---

[8] We note that our Court has applied the four-year statute of limitation for injury to personalty to breach of fiduciary duty claims that involve misrepresentations. See *Hendry v. Wells*, 286 Ga. App. 774, 779 (1) (650 SE2d 338) (2007) (applying four-year statute of limitation to breach of fiduciary duty claims alleging fraud by general partner ); *Kothari v. Patel*, 262 Ga. App. 168, 174 (3) (585 SE2d 97) (2003) (applying four-year statute of limitation to claims of breach of fiduciary duty and fraud claims arising in connection with a promissory note and stock subscription agreement).

16

fiduciary duty that causes damage creates a new cause of action for that specific act. See *Smith v. SunTrust Bank*, 325 Ga. App. 531, 545 (2) (754 SE2d 117) (2014) (each alleged improper income distribution by fiduciary constituted a separate cause of action for breach of fiduciary duty); *Mayfield v. Heiman*, 317 Ga. App. 322, 329 (4) (b) (730 SE2d 685) (2014) (court must "[look] to each of the beneficiary's specific claims of acts of mismanagement to determine when her causes of action accrued"); *Hamburger*, 286 Ga. App. at 387 (2), n. 19 (noting that a "cause of action for breach of fiduciary duty accrues each time defendant commits a wrongful act that causes appreciable damage").

Additionally, because Walter alleges a number of breaches of fiduciary duty over a range of time, we also must determine whether to use the First Application or Second Amended Application in calculating the limitation period. We find that these claims relate back to the First Application, which sought dissolution of the partnership, in part, based on allegations that although Walter was listed as the general partner in the LLLP Agreement and a 96% owner of the partnership in tax returns, he was not consulted on decisions concerning Mizpah Farms and was not involved in its management. These allegations were sufficient to give the Appellees fair notice that Walter might assert additional claims arising out of their alleged

17

failure to act in accordance with the LLLP Agreement. Accordingly, we find that any claims under these counts accruing on or before December 17, 2004 are barred by the applicable statute of limitation.

Walter asserts, however, that the limitation periods did not begin to run until 2010, when he stopped receiving rental income, because the statutes of limitation on these claims were tolled by his relationship with Bobby. "On motion for summary judgment, the movant has only the burden of proof as to the affirmative defense of the running of the statute of limitation and not to establish the absence of facts showing a tolling." (Citation and punctuation and omitted.) *Smith v. SunTrust Bank*, 325 Ga. App. 531, 539 (1) (754 SE2d 117) (2014). Once the movant has presented evidence that the claim is time-barred, "[t]he burden of persuasion then shifts to the nonmovant to present some evidence showing that an issue exists that the statute has not run but has been tolled." (Citation and punctuation omitted.) Id. Because the Appellees have presented evidence indicating that the claims accruing before December 17, 2004 are untimely, Walter has the burden to present evidence supporting his tolling argument.

Walter contends the limitation periods were tolled by the fiduciary relationship between Bobby and him, as family, tenants in common, partners in Mizpah Farms,

18

and Bobby's status as Walter's agent under a power of attorney he signed in connection with the farming operation. However, it is well settled that "a confidential relationship cannot, standing alone, toll the running of the statute. Rather, a confidential relationship means only that the plaintiff has cause to rely upon, and place confidence in, the defendant." *Hunter, Maclean, Exley & Dunn, P.C. v. Frame*, 269 Ga. 844, 847-848 (1) (507 SE2d 411) (1998). To toll a statute of limitation, Georgia law requires proof of "fraud by which the plaintiff has been debarred or deterred from bringing an action, [and] the period of limitation shall run only from the time of the plaintiff's discovery of the fraud." OCGA § 9-3-96. In order to establish such fraudulent concealment, a plaintiff must prove:

> (1) actual fraud involving moral turpitude on the part of the defendant; (2) [that] the fraud conceal[ed] the existence of the cause of action from the plaintiff, thereby debarring or deterring the knowing of the cause of action; *and* (3) [that] plaintiff exercised reasonable diligence to discover the cause of action, notwithstanding the failure to discover within the statute of limitation.

(Citation omitted; emphasis supplied.) *Heretyk v. P. M. A. Cemeteries, Inc.*, 272 Ga. App. 79, 80-81 (1) (611 SE2d 744) (2005). Thus, the existence of a confidential relationship

19

affects only the extent of (a) the defendant's duty to reveal fraud, and (b) the plaintiff's corresponding obligation to discover the fraud for herself. Where a confidential relationship exists, a plaintiff does not have to exercise the degree of care to discover fraud that would otherwise be required, and a defendant is under a heightened duty to reveal fraud where it is known to exist.

(Footnote omitted.) *Hunter*, *McLean*, 269 Ga. at 848 (1). Nevertheless, "the fraud itself – the defendant's intention to conceal or deceive – still must be established, as must the deterrence of a plaintiff from bringing suit." Id. See also *Warnock v. Warnock*, 206 Ga. 548, 550 (57 SE2d 571) (1950) (statute not tolled "where no facts are alleged to show fraud on the part of the defendant preventing discovery by the plaintiffs within the statutory period.") (citation omitted). And "[u]nder Georgia law, fraud that gives rise to a cause of action does not necessarily establish the fraud necessary to toll the statute of limitation." (Citation and punctuation omitted.) *Hendry v. Wells*, 286 Ga. App. at 780 (1).

Walter has failed to point us to evidence indicating an intent to conceal or deceive on the part of Bobby. Although Walter notes Bobby had a heightened duty to disclose any fraud, he fails to identify any specific instances of "fraud" that were not revealed to him. The record shows that he signed documents and tax returns in the

20

capacity of general partner, which showed the income the partnership had earned, and the evidence demonstrates that Bobby (and Davidson) thought he was the general partner until this litigation arose. He also acknowledged that the Mizpah Farms tenants paid their rent directly to him until 2010 and he received timber profits on the land until that time. Moreover, Walter identifies only one representation to support his tolling argument. He asserts that Bobby told him at some point in 2003 that Walter was not receiving farming income because the farm was not making any money at the time. But he has not pointed us to evidence indicating that this representation was even false, much less to evidence indicating that it was fraudulently intended to debar him from bringing suit.[9]

Accordingly, we find that the trial court properly granted summary judgment as to any claims under Counts VI, VII, X, and XI to the extent they accrued on or before December 17, 2004, but to the extent they accrued after December 17, 2004,

---

[9] Further, although Bobby apparently retrieved the original partnership documents from Davidson, either in 2000 or 2002, and put them in a safe deposit box, no evidence exists that Walter asked to see either the original or copies of these documents or financial records prior to 2010 or that he was denied access to the documents in the interim. Where a party is on notice of the true contents of partnership documents, from which he could have discovered the truth, no tolling occurs. *Hendry*, 286 Ga. App. at 780 (1). Accordingly, Walter has failed to show that the Appellees' actions tolled the statute of limitation.

21

such claims are not time-barred, and the trial court erred in granting summary judgment on them.[10]

(c) *Claim for peanut and tobacco quotas and assignments* – Under Count VIII, Walter asserts a separate claim for breach of fiduciary duty under a power of attorney he signed on September 27, 2002,[11] appointing Bobby as his agent for all purposes with the FSA office in Grady County. See *Wright v. Apartment Inv. & Mgmt. Co.*, 315 Ga. App. 587, 592 (2) (a) (726 SE2d 779) (2012) ("Where an agency relationship exists, the agent has a fiduciary duty to his principal."). Walter asserts and presented evidence that Bobby used his authority under the power of attorney to misappropriate

---

[10] In support of his claims, Walter has produced evidence that in 2010, Bobby directed that all rental income for Mizpah Farms would no longer go to Walter, and the Appellees later attempted to oust him from the partnership. Thus, these claims are timely. Appellees, on the other hand, assert that Walter's claims for breach of fiduciary duty arose, if at all, well before 2004 when Walter began questioning why he was not receiving income from the farming operations, which he thought at the time were included in the partnership. The Appellees argue that any subsequent failures to pay Walter stemmed from this initial breach and thus are time-barred. Again, we reiterate that any causes of action accruing under Counts VI, VII, X, and XI after December 17, 2004 are timely. In contrast, any causes of action accruing before that date are untimely, even where the underlying breach resulted in damages occurring after December 17, 2004.

[11] Walter did not cite us to a copy of the 2002 power of attorney in the record, although we located copies of a power of attorney signed March 2, 2009.

22

"hundreds of thousands of dollars in payments" from peanut and tobacco quotas and assignments paid by the USDA and the FSA between 1995 and 2010.

"As a general rule, a power of attorney merely authorizes another agent to do what the grantor principal could do with respect to the recited subject matter." (Citation and punctuation omitted.) *Harris v. Peterson*, 318 Ga. App. 382, 384 (734 SE2d 93) (2012). And "Georgia law prohibits agents such as those acting under a power of attorney from benefiting from their position to the principal's detriment. Indeed, an agent may not profit from the agency to the detriment of the principal." (Citations and punctuation omitted.) Id. See also OCGA § 10-6-21 ("The agent shall act within the authority granted him, reasonably interpreted"). Thus, although the power of attorney defines the limits of the agency relationship between Walter and Bobby, any breach of fiduciary duty thereunder is determined by statutory and common law and not the terms of the power itself. Because Walter is seeking to recover damage to his personalty arising from the breach of common law and statutory duties, we apply the four-year statute of limitation under OCGA § 9-3-31 to such claims.

We also find that this claim does not relate back to the filing date of the First Application, which sought only the dissolution of Mizpah Farms. The claim under

23

Count VIII arises out of a completely different set of facts, and nothing in the First Application would have put Bobby on fair notice of such a claim. See *Jensen*, 317 Ga. App. at 883 (1) (b). Accordingly, in determining whether the limitation period on this claim has run, we use March 30, 2012, the date the Second Amended Application was filed.

Bobby admitted that he held and used Walter's power of attorney at the FSA until Walter revoked it in March 2011. However, Walter also held Bobby's power of attorney at the FSA until Bobby revoked it in 2011 , and Walter admitted that he had access to the FSA records regarding the farm operations. Under these circumstances, we find that Walter cannot show that Bobby fraudulently concealed information about the peanut and tobacco quotas and assignments, and as Walter admitted, he "didn't chase [the issue] down like [he] should have." Therefore, no issue of tolling arises as to this claim.

Accordingly, we find that any claims under Count VIII accruing on or before March 30, 2008 are time-barred. However, any claims accruing thereafter are not untimely, and the trial court erred in granting summary judgment as to any such claims.

(d) *Dissolution of Mizpah Farms* – In Count V, Walter seeks dissolution of Mizpah Farms under OCGA § 14-9-802 on the ground that it is not reasonably practical to carry on the business of the partnership in conformity with the LLLP Agreement. Walter also seeks dissolution on the ground that if Bobby is determined to be the general partner, his misconduct has prejudicially affected the partnership. Such a claim refers to the state of the partnership as of December 17, 2010 and after; thus, it is timely.

However, an application to dissolve a limited partnership under OCGA § 14-9-802 may be filed only by or on behalf of a partner of a limited partnership, so Walter's ability to pursue these claims turns on a determination of whether he was a partner on December 17, 2010. We find that material issues of fact remain on that issue.

The Appellees argue that Walter became disqualified as General Partner when he transferred all of his partnership units to Bobby and the Grandchildren as of December 31, 2000, when the Assignment became effective. They contend that the Assignment constituted Walter's withdrawal from the partnership, and under the terms of the LLLP Agreement, Bobby became the successor general partner when the

Assignment went into effect.[12] They also note that Walter's only partnership certificate was cancelled on December 31, 2000.

However, Walter asserts that the LLLP Agreement prohibits withdrawal by a general partner and that he, in fact, never withdrew. Walter also notes that the LLLP Agreement contemplates the issuance of general partnership units. Walter argues that he still has an interest in Mizpah Farms and he can seek dissolution of the partnership because he still holds general partnership units. Although the record contains no partnership certificate relating to general partnership units, other documents in the attorney's file indicate that Walter may have received at least a two percent interest in general partnership units over and above the shares reflected on his partnership certificate and that he may have retained such units even after the Assignment became effective. Moreover, the record demonstrates that Bobby, Davidson, and Walter all believed that Walter remained as general partner until this lawsuit arose. And evidence shows that for ten years or more, he continued to act in the capacity of general partner for at least some purposes, including signing tax returns and other documents, without objection from Bobby or the Grandchildren.

---

[12] Section 7.2 of the LLLP Agreement provides, "If Walter Godwin should die or become unable or unwilling to act as a General Partner for any reason, Bobby Godwin shall be appointed as a successor General Partner."

We find that this evidence presents an issue of fact for the jury as to whether Walter had assigned away all his partnership interests in Mizpah Farms, and the trial court erred in resolving this issue on summary judgment.

(e) *Other claims* – We find that Walter's claims under Counts IX, XII, XIII, and Count XIV seeking equitable and declaratory relief, as well as punitive damages and attorney fees, are based on the same factual allegations as his other claims and are barred except to the extent that they relate to the claims under Counts V, VI, VII, VIII, X, and XI that we have found to be timely. See *Plyman v. Glynn County*, 276 Ga. 426, 427 (578 SE2d 124) (2003) ("courts of equity usually act in obedience and in analogy to the statutes of limitation, in cases where it would not be unjust and inequitable to do so.") (citation and punctuation omitted).

*Judgment affirmed in part and reversed in part. Phipps, C. J., and Ellington, P. J., concur*.

27