**FIRST DIVISION**
**BARNES, P. J.,**
**MCMILLIAN and REESE, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 26, 2018**

# In the Court of Appeals of Georgia

A18A1154. HUDDLE et al. v. HEINDEL.

REESE, Judge.

The Appellants, Mark and Elizabeth Huddle, challenge the trial court's grant of summary judgment to the Appellee, S. Clark Heindel, on Elizabeth Huddle's claims for professional negligence, negligent infliction of emotional distress, and breach of fiduciary duty, and the dismissal of Mark Huddle's loss of consortium claim. For the reasons set forth infra, we affirm in part and reverse in part.

Viewed in the light most favorable to the non-movants,[1] Elizabeth Huddle ("Huddle") married Mark Huddle in 2005 and they had two daughters. In January 2010, Elizabeth Huddle ("Huddle") sought therapy from the Appellee for assistance

---

[1] *Ussery v. Children's Healthcare of Atlanta*, 289 Ga. App. 255, 258 (656 SE2d 882) (2008) (citation and footnote omitted).

with emotional attachment issues. Huddle testified at her deposition that she "was an addict and had substance abuse problems," and had a history of "[b]orderline personality disorder, acute anxiety disorder, agoraphobia, and severe depression." She sought treatment from the Appellee, a licensed psychologist,[2] because she wanted to raise her two daughters as "healthy and happy children."

Huddle saw the Appellee at his office from January 2010 through March 2012 for counseling. During that time, Huddle never brought her children to the counseling sessions, and the only phone calls she received from the Appellee were for appointment reminders. Also, from 2010 through 2012, Huddle and the Appellee did not communicate through text or Facebook messages. The last time Huddle saw the Appellee in his office was in March 2012.

Huddle testified that she and the Appellee became "Facebook friends" in August or September of 2013 and exchanged multiple messages. Around that time, she sent a "private" Facebook message to the Appellee seeking his "therapeutic advice" because her daughter was having "body issues[.]" The Appellee testified that he responded to her message, telling her that body image issues were common in

_____

[2] During his deposition taken in 2016, the Appellee testified that he no longer had an active license to practice psychology in Georgia.

young girls and to "[m]onitor it[, and] [i]f it [got] worse, refer [the daughter] to somebody."

Huddle and the Appellee continued to correspond with each other through Facebook, and then unexpectedly encountered each other at a clothing store in April 2014. In May 2014, Huddle and the Appellee met for lunch. Shortly thereafter, they began a sexual relationship.[3] During the course of their sexual relationship, Huddle and the Appellee also communicated through cell phone text messages and Kik (a message application). Huddle testified that she and her husband had erased the Facebook, text and Kik messages after her husband discovered them.

In June 2014, Huddle's husband met with the Appellee over lunch and told him that "[the Appellee had] created the perception at least of engaging in predatory behavior" with his wife which needed to stop. Huddle's husband filed complaint dated June 27, 2014 against the Appellee to the "Composite Board" ("Board"). Huddle wrote a separate, undated letter to the Board, alleging that the Appellee had engaged in "unprofessional and unethical behavior."

---

[3] During the course of their sexual relationship, the Appellee provided Huddle with marijuana and the two consumed alcohol together.

In September 2014, Huddle began seeing a new therapist, Dr. Kennedy. Huddle filled out an intake form for Dr. Kennedy and identified her chief concern as needing, "[s]upport and help with depression and 'pain' after an affair with a former therapist."

The Appellee testified that the Appellants told him that they had an "open marriage" and "invited" him into it. Further, the Appellee testified that Huddle was no longer his patient during the time of their sexual relationship, and that he had no intention of resuming the "psychologist-patient relationship" with Huddle at the time she questioned him about her daughter's body image issues.

On December 28, 2015, the Appellants filed suit against the Appellee, asserting claims for professional negligence, breach of fiduciary duty, negligent infliction of emotional distress, and loss of consortium, and seeking punitive damages in addition to attorney fees and expenses. The Appellants attached to the complaint an expert affidavit of Dr. Andrew Gothard, a licensed psychologist, pursuant to OCGA § 9-11-9.1.

The Appellee filed a motion for summary judgment, alleging that the professional negligence and breach of fiduciary duty claims were barred by the two-year statute of limitation; the negligent infliction of emotional distress claim lacked a showing of physical impact or pecuniary loss; and there was no "clear liability" by

4

the Appellee as to the other claims. The Appellee also filed a motion to dismiss Mark Huddle's loss of consortium claim, alleging that his claim was actually for adultery and/or alienation of affection, both of which had been abolished in Georgia.[4]

After a hearing,[5] the trial court granted the Appellee's motions. This appeal followed with the Appellant excluding the "transcript of evidence and proceedings" and "sealed medical records" from the appellate record.

On appeal, the Appellants argue that the trial court erred in granting the Appellee's motion for summary judgment as to the claims of professional negligence, breach of fiduciary duty, and negligent infliction of emotional distress; and the motion to dismiss Mark Huddle's loss of consortium claim.

> On summary judgment, [the] movant has the burden to show there is no genuine issue as to any material fact and that he is entitled to a judgment as a matter of law. In ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all

---

[4] See OCGA § 51-1-17.

[5] The record shows that the hearing was to address several of the Appellee's motions including the motion for summary judgment. The hearing transcript is not part of the appellate record. According to the Appellee's brief, the court reporter lost her notes and her audio-recording of the hearing. The Appellants' brief is silent on this issue and the Appellants did not file a reply brief.

inferences and conclusions arising therefrom most favorably toward the party opposing the motion.[6]

With these guiding principles in mind, we turn now to the Appellants' claims of error.

1. The Appellants argue that the trial court erred in granting the Appellee's motion for summary judgment as to Huddle's claim for professional negligence. Specifically, the Appellants contend that Huddle and the Appellee consented to a physician-patient relationship through July 2014 and thus her professional negligence claim was filed within the statutory two-year period. We disagree.

Generally, an action for professional negligence must be brought within two years after the injury, arising from negligence, or wrongful act occurred.[7] Thus, because the Appellants filed suit on December 28, 2014, they must show that their claims arose on or after December 28, 2012.

"Georgia law is clear that physician-patient privity is an absolute requirement for the maintenance of a professional malpractice action."[8] Physician-patient privity

---

[6] *Williams v. Food Lion*, 213 Ga. App. 865 (1) (446 SE2d 221) (1994) (citation omitted).

[7] See OCGA § 9-3-71 (a).

[8] *Schrader v. Kohout*, 239 Ga. App. 134, 135 (522 SE2d 19) (1999); accord *Ussery v. Children's Healthcare of Atlanta*, 289 Ga. App. 255, 271 (6) (656 SE2d

is the result of "a consensual transaction that establishes the legal duty to conform to a standard of conduct. The relationship is considered consensual where the patient knowingly seeks the assistance of the physician and the physician knowingly accepts [her] as a patient."[9] Further, a physician-patient relationship can by inferred from the physician's notes and conversations with the parties that showed the physician agreed to continue to "act as the [patient's] physician[.]"[10]

Here, it is undisputed that Huddle and the Appellee maintained a psychologist-patient relationship from January 2010 through March 2012. Huddle stated in her affidavit that she "took a break from formal treatment with [the Appellee] from April 2012 until the fall of 2013[,] did not see any other therapists [during that time,] and did not terminate [the Appellee] as [her] therapist." However, it is undisputed that the Appellants erased *all* of the social media communications including pictures, text messages, Facebook communications and Kik messages between Huddle and the

---

882) (2008).

[9] *Schrader*, 239 Ga. App. at 136 (citations and punctuation omitted).

[10] See *Ussery*, 289 Ga. App. 257-258 (Affirmed the denial of summary judgment to the physician when evidence of the doctor's notes and conversations with the minor patient's mother demonstrated that he would continue to "act as the child's physician" after she was transferred to an intensive care unit.).

Appellee prior to filing their lawsuit. Further, the Appellants have not produced any notes, medical records or billings showing that a psychologist-patient relationship existed between Huddle and the Appellee after March 2012.

In contrast, the Appellee testified that he did not consider Huddle his patient during the time of their sexual relationship. The record shows that the Appellee did not bill Huddle or her insurance carrier for professional services or maintain any notes or medical records regarding Huddle after March 2012.

Also, the appellate record does not contain the sealed medical records of Huddle that were filed with the trial court nor is there a transcript of the motions hearing.[11] The record does not show that either party sought to reconstruct the motions hearing.[12]

---

[11] Under OCGA § 5-6-41 (c),
In all civil cases tried in the superior and city courts and in any other court, the judgments of which are subject to review by the Supreme Court or the Court of Appeals, the trial judge thereof may require the parties to have the proceedings and evidence reported by a court reporter, the costs thereof to be borne equally between them; and, where an appeal is taken which draws in question the transcript of the evidence and proceedings, it shall be the duty of the appellant to have the transcript prepared at the appellant's expense.

[12] See OCGA § 5-6-41 (g), (i).

Based on the foregoing, the Appellants did not "point to specific evidence giving rise to a triable issue[]" as to whether a psychologist-patient relationship existed after March 2012 between Huddle and the Appellee.[13] Thus, the trial court did not err in granting summary judgment on behalf of the Appellee as to Huddle's professional negligence claim.

2. The Appellants argue that the trial court erred in granting summary judgment on Huddle's claim that the Appellee breached a fiduciary duty to Huddle by engaging in a sexual relationship with her. We agree.

"Georgia has no specific statute of limitation for breach of fiduciary duty claims. Instead, [courts] examine the injury alleged and the conduct giving rise to the claim to determine the appropriate statute of limitation. . . . In applying the limitation period, [courts] must also remain mindful that 'the statute of limitation for a cause of action for breach of fiduciary duty is triggered by a wrongful act accompanied by any appreciable damage.'"[14]

---

[13] *Lau's Corp. v. Haskins*, 261 Ga. 491, 493 (1) (405 SE2d 474) (1991).

[14] *Godwin v. Mizpah Farms*, 330 Ga. App. 31, 38-39 (3) (b) (766 SE2d 497) (2014) (citations and punctuation omitted); see also *Reaugh v. Inner Harbour Hosp.*, 214 Ga. App. 259, 260 (1) (447 SE2d 617) (1994) (The statute of limitation as to the plaintiff's breach of fiduciary duty claim against the defendant hospital was determined by "the nature of the injury sustained, rather than by the legal theory

Here, Huddle sought to recover under a breach of fiduciary duty theory[15] based upon alleged conduct that the Appellee misused confidential information, e.g. that he "used the intimate knowledge of [Huddle's] history of addiction to his advantage to lower her inhibitions and entice her to have sex with him."[16]

When the Appellee sought summary judgment on this claim, he asserted that the breach of fiduciary duty claim was "no more than a renaming of a professional negligence claim," and that the two-year statute of limitations period set forth in OCGA § 9-3-71 thus applied. But, "[a]s the Supreme Court held in *Tante*,[17] "a claim for breach of fiduciary duty is *not* one for professional malpractice because it is not

---

underlying the claim for relief.") (citation omitted).

[15] Huddle maintains on appeal that "fiduciary obligations do not end the moment the relationship ends because fiduciaries are entrusted with confidential information that must remain confidential beyond the existence of the relationship." See, e.g., *Cooksey v. Landry*, 295 Ga. 430 (761 SE2d 61) (2014).

[16] See generally, *Tante v. Herring*, 264 Ga. 694, 696 (2) (453 SE2d 686) (1994) (jury could find breach of duty, where attorney used his position of trust to conduct extramarital affair with client); *Brewer v. Paulk*, 296 Ga. App. 26, 30 (1) (a) (673 SE2d 545) (2009) ("[A]n actionable breach of fiduciary duty may arise when a confidential relationship is abused for purposes of sexual gratification.") (citation and punctuation omitted).

[17] 264 Ga. at 695-696 (2).

10

based on the performance of *professional* services, but rather, upon a violation of the duty of utmost good faith and loyalty."[18]

Based on the foregoing, in conjunction with Huddle's theory underlying the breach of fiduciary duty claim, the limitations statute governing professional malpractice claims is not appropriate here.[19] In the instant action, the breach of fiduciary duty claim is premised on the Appellee engaging Huddle in a sexual relationship; that such relationship began shortly after May 2014; and that this suit was filed on December 2015. Thus, the suit was filed within two years of the alleged breach of fiduciary duty.[20]

3. The Appellants contend that the trial court erred in granting summary judgment on Huddle's claim for negligent infliction of emotional distress because she

---

[18] *Blier v. Greene*, 263 Ga. App. 35, 39 (2) (587 SE2d 190) (2003) (emphasis supplied).

[19] See, e.g., *Hendry v. Wells*, 286 Ga. App. 774, 779 (1) (650 SE2d 338) (2007) (where breach of fiduciary duty claim alleged partner made material misrepresentations and rendered plaintiffs unable to protect their rights and preserve their investment, employing a four-year statute of limitation applicable to injuries to personalty).

[20] *Godwin*, 330 Ga. App. at 38-39 (3) (b).

suffered a pecuniary loss and the aggravation of an existing illness due to the Appellee's conduct. We disagree.

"In a claim concerning negligent conduct, a recovery for emotional distress is allowed only where there is some impact on the plaintiff, and that impact must be a physical injury."[21] The three elements of the Georgia impact rule are: "(1) a physical impact to the plaintiff; (2) the physical impact causes physical injury to the plaintiff; and (3) the physical injury to the plaintiff causes the plaintiff's mental suffering or emotional distress."[22]

However, under the pecuniary loss rule, "a plaintiff may … recover damages for emotional distress flowing from a defendant's negligence, notwithstanding the absence of physical injury. But these damages are recoverable only if the plaintiff has suffered a pecuniary loss and has suffered an injury to the person, albeit not physical."[23]

---

[21] *Lee v. State Farm Mut. Ins. Co.*, 272 Ga. 583, 584 (I) (533 SE2d 82) (2000) (citation and footnote omitted).

[22] Id. at 586 (I) (citation omitted).

[23] *Nationwide Mut. Fire Ins. Co. v. Lam*, 248 Ga. App. 134, 138 (2) (546 SE2d 283) (2001) (punctuation omitted).

Huddle acknowledged in her discovery responses that she did not suffer a physical impact related to her claim for negligent infliction of emotional distress, but asserts that she suffered a pecuniary loss and aggravation of pre-existing mental health issues, evidenced by receiving therapy treatment and related bills from her subsequent treating psychologist, Dr. Kennedy. The record contains only two of Dr. Kennedy's psychotherapy progress notes, dated July 12, 2016 and July 19, 2016, and her billing records from September 2014 through February 2016, regarding Huddle. The psychotherapy progress notes of Dr. Kennedy discuss a family vacation and the stress related to her lawsuit, whereas the billing records show psychotherapy office visits and payments, but no other details.

Pretermitting the above, "[i]t is the primary responsibility of the appropriate parties and not this court to ensure that all documents relevant to the disposition of an appeal be duly filed with the clerk of this court prior to the issuance of our appellate decision."[24] As discussed in Division 1, supra, the record does not contain

---

[24] *McLendon v. Advertising That Works*, 292 Ga. App. 677, 679 (1) (665 SE2d 370) (2008) (punctuation and footnote omitted); see also *Demere Marsh Assoc., LLC v. Boatright Roofing & Gen. Contracting, Inc.*, 343 Ga. App. 235, 236, n. 1 (808 SE2d 1) (2017) ("[I]t is not the duty of this Court to cull the record on a party's behalf to locate information or facts in support of a party.") (citation and punctuation omitted).

the transcript of the motions hearing or the sealed medical rcords filed with the trial court. Based on the foregoing and under the circumstances, the Appellants have failed to meet their burden of showing, by the record, that the trial court erred in granting summary judgment on behalf of the Appellee as to Huddle's negligent infliction of emotional distress claim.[25]

4. The Appellants assert that the trial court erred in dismissing Mark Huddle's loss of consortium claim against the Appellee. We agree.

The Appellants concede that a claim of loss of consortium is a "dependent cause of action[,]" which is derivative of Huddle's right to recover for her injuries.[26] Generally, "Georgia law has long recognized the separate nature of the right of action for loss of consortium. A suit by a husband for personal injuries, and a suit by his

---

[25] See *Tahamtan v. Sawnee Electric Membership*, 228 Ga. App. 485 (491 SE2d 918) (1997) ("[T]he burden is on the party alleging error to show it affirmatively by the record and . . . where the proof necessary for determination of the issues on appeal is omitted from the record, the appellate court must assume that the judgment below was correct and affirm.") (citation and punctuation omitted).

[26] *Hightower v. Landrum*, 109 Ga. App. 510, 514 (4) (136 SE2d 425) (1964) ("One spouse's right of action for the loss of the other's society or consortium is a derivative one, stemming from the right of the other.").

wife for loss of consortium, are separate and distinct claims for relief[.]"[27] "When the other spouse cannot recover from the alleged tort-feasor as a matter of law, however, the alleged tort-feasor also is not liable for loss of consortium arising from those injuries."[28]

"The running of limitation for a personal injury claim does not bar a derivative loss of consortium claim."[29] Stated a different way, "the fact that the statute of limitation has run on the underlying claim is of no consequence to the viability of the derivative loss of consortium claim[.]"[30] Based on the foregoing and in light of our discussion in Divisions 1 and 2, supra, it was error for the trial court to grant summary judgment as to Mark Huddle's loss of consortium claim.[31]

---

[27] *White v. Hubbard*, 203 Ga. App. 255, 256 (416 SE2d 568) (1992) (citations and punctuation omitted).

[28] *Holloway v. Northside Hosp.*, 230 Ga. App. 371, 372 (496 SE2d 510) (1998).

[29] *Whitten v. Richards*, 240 Ga. App. 719, 722 (2) (523 SE2d 906) (1999); (citations omitted); accord *Elwell v. Haney*, 169 Ga. App. 481, 482 (313 SE2d 499) (1984).

[30] *Beamon v. Mahadevan*, 329 Ga. App. 685, 688 (2), n. 8 (766 SE2d 98) (2014) (citation and punctuation omitted).

[31] See generally, *Cowart v. Widener*, 287 Ga. 622, 624 (1) (a) (697 SE2d 779) (2010) ("Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met.") (citations omitted).

*Judgment affirmed in part and reversed in part. Barnes, P. J., concurs. McMillian, J., concurs fully in Division 1 and concurs in judgment only in Divisions 2, 3 and 4.\**

**\* DIVISIONS 2, 3, AND 4 OF THIS OPINION ARE PHYSICAL PRECEDENT ONLY. COURT OF APPEALS RULE 33.2 (a).**